(37 Misc. Rep. 64.)

### McGRATH v. GROUT, Comptroller.

(Supreme Court, Special Term, Kings County. January, 1902.)

1. STATUTES—ENACTMENT.
    It is to be presumed that a statute was passed by the legislature in compliance with all constitutional requirements until the contrary is conclusively established, and the question will not be determined on a motion unless unavoidably necessary to the decision.

2. SAME—COUNTY GOVERNMENT.
    Laws 1901, cc. 704–706, changing the constitutional county offices of sheriff, county clerk, and register of the county of Kings from a fee system to a salary basis, are not "laws relating to the property, affairs and governments of cities and the several departments thereof," which are divided into general and special laws, which, when special, must be passed by the legislature after a nonacceptance by the mayor, as required by Const. art. 12, § 2, and hence are valid though not passed in such a manner.

Action by Thomas McGrath against Edward M. Grout, comptroller of the city of New York. Motion to continue pendente lite a temporary injunction restraining defendant from paying the salaries of the sheriff, county clerk, and register of the county of Kings. Denied.

Luke D. Stapleton, for plaintiff.
James McKeen, for defendant.

MADDOX, J. This is a taxpayer's action, and plaintiff contends that chapters 704, 705, and 706 of the Laws of 1901 are special city laws, and, not having been again passed by the legislature after a nonacceptance by the mayor of the city, as required by section 2 of article 12 of the constitution, are hence invalid and not constitutional enactments. The presumption that the legislature complied with all constitutional requirements, like that of the constitutionality of an enactment, obtains and must prevail until the contrary be conclusively established, and that question should not be determined upon a motion unless material and unavoidably necessary to the decision of the question presented. Demarest v. City of New York, 147 N. Y. 207, 41 N. E. 405. The statutes in question relate to three county offices,—those of sheriff, county clerk, and register of the county of Kings,—and contemplate and provide for a change in each

780    74 NEW YORK SUPPLEMENT   (Sup. Ct.

and 108 New York State Reporter

from the fee system to that of a salaried office. The offices are such as are termed and known as constitutional in character (Const. art. 10, § 1), and the incumbents are elected by the electorate of the county for fixed terms. The offices are not departments of the municipality, and the incumbents perform no function of a municipal character. They have nothing to do with municipal affairs, and cannot have, under the laws under consideration, save to account for and turn over to the city the fees received by them, and to look to the city instead of to a county board, for there can be no question as to the legislative power to make the offices salaried, for the payment of their respective salaries and the expenses of their respective offices. · The entity of the county as a political division of the state cannot be questioned, and the liability of the city of New York for the county charges of the county of Kings is recognized and fixed, and their payment provided for by the charter. "All the municipal and public corporations, * * * but not including counties," within the territory embraced in the greater city, were "annexed to, united and consolidated with" the old city, and now form and make up "the city of New York." Charter (Laws 1897, c. 378) § 1. The county organizations and county officers in the several counties embraced within the territory of the city of New York have, so far as required by the constitution, been fully preserved. Indeed, if it were otherwise, we would have a very serious question for consideration. It is the duty of the state comptroller annually to transmit to the city comptroller "for levy and collection * * * a statement of the amount of tax for state purposes to be paid by the counties of New York, Kings, Queens and Richmond, respectively" (section 1595); and authority is given for the issuance of revenue bonds to make payment of the quota of such state taxes imposed upon and chargeable to "said city and the counties wholly comprised therein" (section 186). By section 226 of the charter it is provided that the board of estimate and apportionment shall annually make and submit to the board of aldermen "a budget of the amounts estimated to be required to pay the expenses of conducting the public business of the city of New York, as constituted by this act, and of the counties of New York, Kings, Queens and Richmond, for the then ensuing year." Since January 1, 1895, there has been no board of supervisors in Kings county, the duties of such board having been devolved upon the board of aldermen of the city of Brooklyn (Laws 1895, c. 954), and so continued until the creation of the city of New York on January 1, 1898, since which time such "duties * * * not transferred or devolved upon administrative departments, boards, commissions, officers or other functionaries, are * * * vested in the board of aldermen of the city of New York." Laws 1901, c. 466, § 1586.

As there is no county authority to raise by taxation the money necessary therefor, it is provided that the comptroller shall submit annually to the board of aldermen, "for the purpose of imposing the annual taxes, a statement setting forth the amounts by law authorized to be raised by tax in that year, on account of the corporation of the city of New York, as hereby constituted, or for city pur-

poses within said city as created by this act, and purposes for which said city is liable, and on account of the counties of New York, Kings, Queens and Richmond" (section 900), and that in such statement the comptroller shall "include and state specifically the sum or sums necessary to be raised to pay during the current year the salaries of the county officers and the other county charges and expenses in the counties of New York, Kings, Queens and Richmond, respectively, and the board of aldermen is * * * directed to levy upon and collect from the taxable property within each of said counties, respectively, the sum or sums so necessary to be raised to pay the salaries of county officers and other county charges and expenses of such county; to the end that each of such counties shall ultimately bear and pay all expenses necessary to be incurred within the county for county as distinguished from city purposes" (section 902). Thus we have ample provision for the raising of funds to meet county charges and expenses, and, as well, provision for the payment thereof, since "all county charges and expenses and salaries of county officers * * * shall be audited and, paid by the department of finance out of the fund or appropriation applicable thereto" (section 1583). Thus, as we have seen, that there is and that there will be "expenses necessary to be incurred in a county for county as distinguished from city purposes" (section 902) is fully contemplated and recognized, and, as well, provided for, by the charter; and as the laws under consideration relate solely to the salaries and expenses of county officers,—that which has reference to the performance of the functions and duties of county officers only,—the county charges therefor are not chargeable against the municipality in its entirety, but, as provided by section 902, against "the taxable property within" the county in which the county charges and expenses are incurred. The language of the constitutional provision (article 12, § 2), that "laws relating to the property, affairs and government of cities, and the several departments thereof, are divided into general and special city laws," means necessarily laws connected with or in some wise affecting the city government, and its affairs. Such is not the case here, as shown above. The situation is simply one where duties of a county nature, such as the raising of funds wherewith to meet the county quota of the state taxes, county charges and expenses, and the salaries of county officers, have been transferred to municipal officers, and an unnecessary duplication of public officials avoided. In People v. Taylor, 17 Misc. Rep. 505, 40 N. Y. Supp. 321, and in Schoenberg v. Taylor, 9 App. Div. 236, 41 N. Y. Supp. 491, the fact that there were county officers and employés and that they were to be paid by the city of Brooklyn, succeeding to the charges and liabilities of the county of Kings, was fully recognized; and the cases are not in conflict with the views here expressed, but, so far as the same questions were involved, may well be referred to here as authorities against the plaintiff, though cited by his counsel. The bills are regular upon their face, and, as there is no constitutional defect shown, the motion is denied, and the injunctive provision vacated.

Motion denied.