WILLIAM JAY SCHIEFFELIN, Respondent, *v.* CHARLES W. BERRY, as Comptroller of the City of New York, and Others, Appellants.

First Department, June 4, 1926.

**Municipal corporations — New York City Employees' Retirement System — City Home Rule Law (Laws of 1924, chap. 363) — city retirement applies to county and State offices in so far as salaries are paid by city, as provided by Greater New York Charter, §§ 1700–1725 — local laws relating to compensation restricted by Constitution, art. 12, § 3, to laws relating to compensation of all officers and employees of city — local laws cannot affect compensation of county employees under City Home Rule Law, § 21 — local laws changing retirement age and increasing contribution are invalid — injunction restraining payment of pension under local laws granted.**

An injunction *pendente lite* was properly granted in a taxpayer's action instituted to restrain the secretary of the board of estimate and apportionment of the city of New York from signing any voucher for the payment to John F. Hylan, former mayor of the city of New York, or his widow, of any retirement allowance out of the funds of the New York City Employees' Retirement System, since it appears that the basis of the former mayor's claim to the benefits of the retirement system is local law No. 10 for the year 1925, which reduced the minimum age of retirement for those in his class to fifty-five years and Local Law No. 18 for the year 1925, which provides that the final compensation shall be fixed on the average compensation during the last five years of city service.

The Local Laws in question are invalid, since it appears that the New York City Employees' Retirement System (Greater New York Charter, §§ 1700–1725) applies not only to city employees and officers but also to State and county employees and officers in so far as their salaries are paid by the city, that the power of the city to pass local laws affecting compensation is restricted by section 3 of article 12 of the Constitution to laws relating to compensation of all officers and employees of the city, and that under section 21 of the City Home Rule Law (Laws of 1924, chap. 363) a local law cannot be enacted which supersedes a statute enacted by the Legislature, if such local law applies to or affects any provision or clause relating to the property, affairs or government of a county or counties.

While a local law might be enacted affecting the compensation of city employees, still the local laws in question are unconstitutional, since they change the retirement age and increase the contribution of employees, not only of the city, but also of the county and State who are members of the retirement system. The interests of all the members of the retirement system are so linked together that it is impossible to separate them and, therefore, the local laws in question must fall, since they cannot apply specifically and solely to city employees.

APPEAL by the defendants, Charles W. Berry, as comptroller of the city of New York, and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of April, 1926, granting plaintiff's motion for an injunction *pendente lite* in a taxpayer's action.

*William E. C. Mayer* of counsel [*Arthur Sweeny* with him on the brief; *George P. Nicholson, Corporation Counsel*], for the appellants Charles W. Berry, as comptroller, and another.

*John Lehman* of counsel [*Watson, Godley, Sheppard & Willguss,* attorneys], for the appellant John F. Hylan.

*Leonard M. Wallstein* of counsel [*Ralph M. Frink* with him on the brief], for the respondent.

WAGNER, J. This taxpayer's action was instituted pursuant to section 51 of the General Municipal Law to secure a judgment enjoining the secretary of the board of estimate and apportionment of the city of New York from signing any voucher for the payment to the defendant John F. Hylan, or his widow, of any retirement allowance out of the funds of the New York City Employees' Retirement System, and enjoining the comptroller of the city of New York from paying to said John F. Hylan, or his widow, any retirement allowance out of said funds, and enjoining the said John F. Hylan from receiving any retirement allowance out of these funds.

Upon plaintiff's motion an order was granted in the court below restraining the foregoing acts *pendente lite.* All of the defendants appeal from that order.

Since the facts are not disputed we are concerned upon this appeal only with a legal question.

The undisputed facts are that from January 1, 1918, to and including December 31, 1925, the defendant John F. Hylan was mayor of New York. In September, 1921, he joined the New York City Employees' Retirement System. His application for such membership set forth his previous service as city magistrate, as county judge of Kings county, and as mayor. It also stated the date of his birth as April 20, 1868, and his membership status.

The New York City Employees' Retirement System was established by the enactment of chapter 26, sections 1700 to 1725, inclusive, of the Greater New York Charter (Laws of 1901, chap. 466, added by Laws of 1920, chap. 427, and Laws of 1923, chap. 142, as amd. by Laws of 1923, chaps. 69, 142). The participants in the benefits are known as members, and those who are or may be included in such membership are described in section 1702 (as amd. by Laws of 1923, chap. 142) as follows:

" (a) All persons in city-service, as defined in this chapter, in positions in the competitive or labor class of the civil service, who entered or re-entered such service after the first day of October, nineteen hundred and twenty, and who completed or shall complete six months of city-service after such entrance or re-entrance.

" (b) All persons in city-service, as defined in this chapter, who shall have filed with the board of estimate and apportionment a statement duly executed and acknowledged waiving and renouncing all present and prospective benefits provided wholly or partly by the city of New York through any other retirement system or pension fund and consenting and agreeing to membership and to the deductions for annuity purposes prescribed in this chapter."

It will be seen that membership in the system is compulsory for all in the city service holding positions in the competitive and labor classes, who entered the service after October 1, 1920. Those employees in any class who entered prior to October 1, 1920, and those in the exempt class who entered after October 1, 1920, may join on renouncing the benefits of other city funds.

" City-service " is defined in section 1700, subdivision 3 (as amd. by Laws of 1923, chap. 142), as follows:

" ' City-service ' shall mean service, whether appointive or elective, as an official, clerk or employee of the city or State of New York and of any department, corporation or other body created under the provisions of this act and of any of the municipalities, counties or parts thereof which have been included within the boundaries of the city of New York or which have been incorporated into said city and of any court, so far as such service is paid for by the city of New York or by any of the municipalities, counties or parts thereof which have been included within the boundaries of the city of New York or which have been incorporated into said city.  *  *  *."

Significant of the Legislature's purpose to bring within the membership of the retirement system not only persons engaged in services relating to municipal affairs but those in other public services as well, is section 262 of the Tax Law. This section is part of article 11 dealing with the tax on mortgages and specifies that necessary expenses deductible pursuant to other sections of the same article, by the recording officer from taxes paid him, shall include hire of clerks and assistants.

The section was amended by the Legislature of 1921 (Chap. 271) as follows: " In counties wholly within the city of New York for the purposes of retirement the recording officers, clerks and assistants shall be considered as in the city service to the same extent as though their salaries had actually been paid by the city of New York."

It is to be observed that membership in the retirement system with the consequent mandatory deductions from salary is compulsory for the great bulk of those who entered the city service subsequent to October 1, 1920. Also further, that such compulsory

membership includes not only employees of the city but also officers, clerks and employees of the State, of the courts and of counties within the geographical boundaries of the city, where the compensation is paid by the city or out of the proceeds of the mortgage tax.

Under the scheme of the retirement system the employee who retires because of old age receives an allowance of approximately half of his compensation, provided ordinarily one part by the city and the other part by his contributions during his active service. The city's share, derived from appropriations, is designated as the " pension;" the employee's share, derived from his contributions, is designated as the " annuity." The " retirement allowance " is the pension plus the annuity. Both appropriations and contributions are compulsory.

Prior to the enactment of the local laws here challenged as illegal, section 1700, subdivision 9, of the charter provided that " ' Final compensation ' shall mean the average annual compensation earnable by a member for city-service during his last ten years of city-service."

And by section 1711 the amount of the pension on retirement depends upon the amount of the employee's " final compensation."

Again, before the enactment of the local laws here in question it was provided by section 1710, subdivision 2, that "Any member in city-service may retire upon written application to the board * * * provided that said member * * * shall have attained the minimum age of retirement provided for the group of which he shall be a member at such time."

And then the section sets forth the minimum service retirement ages for various groups, including: " Group number * * * Three: Clerical, administrative, professional and technical workers engaged upon duties requiring principally mental exertion, including heads of departments, 60 years."

The minimum age for group No. 1 was fifty-eight years and for group No. 2, fifty-nine years.

The above-mentioned provisions as set forth were in effect when the Home Rule Amendment of the State Constitution was adopted on November 6, 1923, to take effect on January 1, 1924, and the City Home Rule Law was enacted as chapter 363 of the Laws of 1924. (Consol. Laws, chap. 76.)

In the belief that the City Home Rule Law conferred upon it the necessary power, the New York city municipal legislature, known under that act as the municipal assembly, with the approval of the mayor, enacted local law No. 10 of the New York Local Laws of 1925, effective May 6, 1925, which reads as follows:

"A local law, fixing the minimum age for service retirement of members of the New York City Employees' Retirement System, and superseding so much of subdivision two of section seventeen hundred and ten of the Greater New York Charter as establishes fifty-eight years, fifty-nine years and sixty years respectively as the minimum ages of retirements.

*"Be it enacted by the Municipal Assembly of the City of New York, as follows:*

" Section 1. The minimum ages for service retirement, of members of the New York City Employees' Retirement System in city service, from the groups created by section seventeen hundred and two, subdivision two, of the Greater New York Charter, shall be as follows:

| Group Number | Group Name | Minimun Service Retirement Age for Group. |
|---|---|---|
| " One.... | Laborers and unskilled workers engaged upon duties requiring principally physical exertion | 53 years |
| " Two.... | Mechanics and skilled workers engaged upon duties requiring principally physical exertion | 54 years |
| " Three... | Clerical, administrative, professional and technical workers engaged upon duties requiring principally mental exertion, including heads of departments | 55 years." |

It later enacted local law No. 18 of the New York Local Laws of 1925, effective December 18, 1925, which reads as follows:

" A local law to amend and supersede subdivision nine of section seventeen hundred of the Greater New York Charter in relation to the definition of final compensation.

*"Be it enacted by the Municipal Assembly of the City of New York, as follows:*

" Section 1. Subdivision nine of section seventeen hundred of the Greater New York Charter, being chapter three hundred and seventy-eight of the laws of eighteen hundred and ninety-seven, entitled 'An Act to unite into one municipality under the corporate name of The City of New York, the various communities lying in and about New York harbor, including the city and county of New York, the city of Brooklyn and the county of Kings, the county of Richmond and part of the county of Queens, and to provide for the government thereof,' as revised by chapter four hundred and sixty-six of the laws of nineteen hundred and one, and as amended by chapter four hundred and twenty-seven

of the laws of nineteen hundred and twenty, and chapters sixty-nine and one hundred and forty-two of the laws of nineteen hundred and twenty-three, is hereby amended and superseded to read as follows:

" 9. ' Final compensation ' shall mean the average annual compensation earnable by a member for city-service during his last five years of city-service.

" § 2. This law shall take effect immediately."

To summarize, the first of these local laws reduced the mimimum age of retirement of the group which included the defendant J. F. Hylan from sixty to fifty-five years, and the second increased the basis of the retirement allowance from the last ten-year average salary to his last five-year average salary.

The reduction of the age of retirement, if the local laws be legally enacted, will require a higher contribution to the retirement fund during the period of employment from both the city and the employee.

The financial results of the local amendments appear in the affidavit of Mr. Buck, the actuary in charge of the retirement system. We quote in part therefrom: " It is clear that an employee entering at the age of 25 years will have completed 30 years' service at the age of 55, and consequently will have only 30 /35ths of half pay. 30 /35ths of half pay at the age of 55, however, requires a higher contribution during the period of employment from both the city and the employee than does an allowance of 35 /35ths at the age of 60. Therefore, both the employee's and the city's rate of contribution is increased. For example, the employee's rate of contribution at the age of 25, after allowing for local law No. 10, will be 5.05 per cent., and the City's rate of contribution will be 2.08 per cent."

It is not disputed that this employee's new rate of contribution will be five and five one-hundredths per cent as against his rate of three and ninety-five one-hundredths per cent prior to the enactment of local law No. 10 of the New York Local Laws of 1925, and the city's new rate of contribution will be two and eight one-hundredths per cent as against one and seventy-three one-hundredths per cent prior to said local law No. 10.

The local laws, therefore, substantially increase the cost of the retirement system both to the city and to the members of the system.

On December 30, 1925, the board of estimate and apportionment of the city of New York retired the defendant Hylan pursuant to his application, he being then over fifty-five years old, and on February 5, 1926, fixed his retirement allowance at $4,215 per year.

The retirement was granted, and the allowance fixed in accordance with the provisions of the two local laws hereinbefore set forth.

The acts by the board of estimate instigated the instant suit to restrain the payment of the pension upon the ground that the municipal assembly exceeded its powers in its attempt to amend chapter 26 of the Greater New York Charter in the manner heretofore outlined. The court below granted upon application the motion to enjoin *pendente lite* the payment of the pension because local laws Nos. 10 and 18 of the New York Local Laws of 1925 were enacted without legal authority. (127 Misc. 178.) We agree with the learned justice's conclusions.

Article 12, section 3, of the Constitution, known as the Home Rule Amendment, provides: " Every city shall have power to adopt and amend local laws * * * relating to the * * * compensation of all officers and employees of the city * * *."

Section 2 provides: " The Legislature shall not pass any law relating to the property, affairs or government of cities, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities * * *."

Section 11, subdivision 1, of the City Home Rule Law provides (Laws of 1924, chap. 363): " The local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of the city relating to the * * * compensation of all officers and employees of the city * * *."

It is also to be observed, as was stated in *Schieffelin* v. *Mills* (241 N. Y. 96), that " Neither the Constitution of New York nor the City Home Rule Law confers * * * blanket powers upon the cities of the State. The local laws must touch a city in its property, affairs or government, but this alone will not support them. There is yet another restriction. They must touch the city's property, affairs or government in one or more of certain enumerated ways, *i. e.*, by ' relating ' (1) ' to the powers, duties * * *,' or ' compensation ' of ' officers and employees of the city,' * * . *."

The Court of Appeals in the *Mills* case further pointed out that there are other express restrictions upon the power of the local legislature. They are enumerated in section 12, subdivision 2, and section 21 of the City Home Rule Law.

Section 12, subdivision 2 (as amd. by Laws of 1925, chap. 397), provides: " No local law shall supersede * * * any provision of an act of the Legislature which provision relates to matters other than the property, affairs or government of cities."

Section 21 provides: "Notwithstanding any provision of this chapter, the local legislative body of a city shall not be deemed authorized by this chapter to adopt a local law, which supersedes a State statute now in force or hereafter enacted by the Legislature, if such local law  *  *  *

"9. Applies to or affects any provision of law relating to the property, affairs or government of a *county or counties.*"

It seems manifest that the latter provision is precautionary and merely emphasizes the restriction. Without it the city legislative body would still be powerless to deal with county matters because of the limitations of power contained in the City Home Rule Law.

It is established that pensions and retirement allowances are part of the compensation of public officials. If they were not, of course, their payment would be unconstitutional. (*Matter of Wright* v. *Craig*, 202 App. Div. 684; affd.; 234 N. Y. 548.)

Therefore, by chapter 427 of the Laws of 1920, as amended, the State Legislature in the form of pensions fixed the compensation of State, city and county officials and employees within the metropolitan district of Greater New York.

The local laws designated Nos. 10 and 18 of the New York Local Laws of 1925 undertook to change the retirement ages and retirement allowances of these State and county employees, as well as of city employees. The change compels State and county employees, as well as city employees, to increase their contribution to the retirement fund.

We have seen that the city legislature may only legislate upon matters that touch the city in its property, affairs or government. (City Home Rule Law, § 12, subd. 2, as amd. *supra.*) It is not enough that the matter which is the subject of amendment is contained in a charter provision; it must have some appropriate relation to the city and its government. Nor is the fact that the members of the retirement system are paid by the city and are declared to be in the city service a controlling circumstance. That fact alone does not make the compensation paid to all of them a matter of the property, affairs or government of a city. The State Constitution has established county government as a distinct entity apart from a municipality. By the act in question it has simply imposed upon the city the obligation to make provision in the retirement system for certain State and county employees. The act (Laws of 1920, chap. 427, as amd. *supra*) fixed the retirement allowance of State and county employees to be paid through the city agency.

Upon this question we are not without authority. The phrase "the property, affairs or government" of a city is not new in the

Home Rule Amendment. The phrase is contained in article 12, section 2, of the Constitution of 1894 to define city laws which were therein divided into general city laws and special city laws, the latter being subject to the suspensive veto of the cities affected. Its meaning was adjudicated in *McGrath* v. *Grout* (37 Misc. 64), which was affirmed by the Appellate Division, Second Department (69 App. Div. 314), and the Court of Appeals (171 N. Y. 7). In that case three statutes were under consideration that converted the offices of the Kings county sheriff, county clerk and register, respectively, from fee to salary offices, required those officials to pay over to the city of New York the fees they collected, and the city of New York to make an annual appropriation for the salaries of these officers and their staffs. The statutes had been submitted for action to the mayor of New York, as if they were special city laws. The mayor failed to accept them on behalf of the city and the Legislature adjourned before acting upon them again. They were notwithstanding the mayor's disapproval signed by the Governor. The sole question in the case was whether or not the statutes were constitutional and that depended upon whether they related to the property, affairs or government of the city. If they did, they were unconstitutional for the Legislature had not repassed them over the mayor's veto. All of the courts agreed in the holding that the statutes did not relate to the " affairs " of the city and that the offices of the county are not departments of the municipality, and that the incumbents perform no function of a municipal character.

Judge MADDOX, who decided the *McGrath* case at Special Term, stated: " The offices are not departments of the municipality and the incumbents perform no function of a municipal character; they have nothing to do with municipal affairs and cannot have, under the laws under consideration, save to account for and turn over to the city the fees received by them and to look to the city instead of to a county board, for there can be no question as to the legislative power to make the offices salaried, for the payment of their respective salaries and the expenses of their respective offices. The entity of the county as a political division of the State cannot be questioned, and the liability of the city of New York for the county charges of the county of Kings is recognized and fixed and their payment provided for by the charter. * * * The county organizations and county officers in the several counties embraced within the territory of the city of New York have, so far as required by the Constitution, been fully preserved."

Again, writing for the Court of Appeals on the same case, Judge GRAY said: " For certain purposes connected with the carrying

on of the county organization, with the payment of expenses incidental thereto, and with the collection of necessary moneys by the taxation of property within the county, the city departments were made the agents of the State. But what they are required to do is not connected with, and does not affect, the corporate city government as such. Their action is not for the city, nor did it affect city affairs."

Where language is used in a constitutional amendment and repeated in a statute which had already been judicially construed we may presume that the legislators intended its meaning to be limited to that given it by the courts. (*Halsey* v. *Jewett Dramatic Co.*, 114 App. Div. 420.)

It is undoubtedly true that the provision for the payment of allowances out of the city treasury is a "city purpose" as distinguished from a private purpose or enterprise. (See Const. art. 8, § 10.) That fact has no relation to the question before us, whether it is a city affair comprehended within article 12 of the Constitution. In *Sun Publishing Assn.* v. *Mayor* (152 N. Y. 257) the court held valid the bonds issued by the municipality to pay for subway construction because the money was used for a city purpose though transportation was a matter of State concern. In *Schieffelin* v. *Mills* (241 N. Y. 96) the court denied to the municipality of New York the right to operate a bus system because the enterprise was not a city affair under the City Home Rule Law although the expenditure for the purchase of buses would be a city purpose if such expenditure had State sanction.

Section 21, subdivision 9, of the City Home Rule Law removes all doubt as to the invalidity of the local laws under consideration: " * * * the local legislative body of a city shall not be deemed authorized * * * to adopt a local law, which supersedes a State statute now in force or hereafter enacted by the Legislature, if such local law * * *

" 9. Applies to or affects any provision of law relating to the property, affairs or government of a county or counties."

Legislative history records constant efforts to do away with county government within a municipality as a political subdivision of the State in order to secure, as its advocates insist, more economic and efficient administration. Such movements have as often encountered the vigorous opposition of the Legislature.

Manifestly, subdivision 9 of section 21 of the City Home Rule Law was inserted to make unmistakable the intent to preserve the county government as a separate entity.

In violation of this constitutional and statutory prohibition the municipal assembly of the city of New York has by the enactment

of local laws Nos. 10 and 18 of the New York Local Laws of 1925 attempted to change the compensation of county and State employees who are members of the Retirement System, for the interests and obligations of all the members are so inextricably linked together that separation is impossible.

We are, therefore, constrained to hold the laws under consideration unauthorized and invalid.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.