N. W. BRIDGES, ON BEHALF OF HIMSELF AND ALL OTHER CITIZENS AND TAX-
PAYERS OF THE CITY OF CHARLOTTE, NORTH CAROLINA, v. CITY
OF CHARLOTTE, A MUNICIPAL CORPORATION; L. L. LEDBETTER, TREAS-
URER OF SAID CITY; BOARD OF SCHOOL COMMISSIONERS OF THE
CITY OF CHARLOTTE, A BODY CORPORATE; AND BOARD OF TRUSTEES
TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM.

(Filed 24 June, 1942.)

**1. Schools § 8—**

Ch. 562, Public Laws 1933, abolished special tax and special charter
school districts as then constituted, and retained them solely as local
administrative units of the State school system.

**2. Same—**

A city constituting a special charter school district prior to the enact-
ment of ch. 562, Public Laws 1933, was stripped of its character as a
municipality and its board of school commissioners abolished as an agency
of the municipality in the operation of schools within the district, and by
operation of the Act the municipality, in the discharge of this function,
became an administrative agency of the State school system.

**3. Taxation § 4—**

The State is not a municipality within the meaning of the Constitution,
and since a city or county, in the operation of public schools within its
territory, is not a municipality but an administrative agency of the State,
such administrative units, in imposing taxes necessary to the maintenance
of public schools, is not required to submit the question to a vote, the
limitations imposed by Art. VII, sec. 7, being applicable solely to munici-
palities.

**4. Schools § 9—**

The General Assembly is charged with the duty of providing a system
of public schools by mandate of Art. IX of the State Constitution, and
what is necessary to the maintenance of such system must be given that
interpretation which is consonant with reasonable demands of social prog-
ress, and is a question within the exclusive province of the Legislature.

**5. Same: State § 5a—**

The expression of legislative policy that the Teachers' and State Em-
ployees' Retirement Act has a definite relation to the just and efficient
administration of the public school system is conclusive, and a tax imposed
by a city to raise funds with which to pay its contribution to the Retire-
ment Fund for salaries of teachers paid or supplemented by it, as required
by Public Laws 1941, ch. 25, sec. 8 (c), is for a purpose necessary to the
maintenance of the public school system within its territory.

**6. Schools §§ 8, 31—**

Although an administrative unit of the State public school system is
required by the statute to submit to its voters the question of supplement-
ing State funds to conduct schools of higher standards and longer terms,

the provision for a vote is not in deference to Art. VII, sec. 7, and the establishment of such supplement in no wise affects the character of the unit as a State agency for the administration of the public school system.

**7. Schools § 9—**

The Constitution requires that a six months term of public school be maintained as a minimum, and places the duty upon the General Assembly to meet this requirement and confers authority upon it to determine the quality and extent of a system of public schools beyond this minimum which the State is able to provide.

**8. State § 5a:  Constitutional Law § 12—**

Benefits received by State employees under the Retirement Fund are deferred payments of salary for services rendered, and therefore such payments do not offend Art. I, sec. 7, of the State Constitution.

**9. Taxation § 4—**

Where an administrative unit of the public school system has voted a tax to supplement State funds to maintain schools of higher standards within its territory, it is required to contribute to the State Retirement Fund for teachers whose salaries are paid or supplemented by it, ch. 25, sec. 8 (c), ch. 143, sec. 1, Public Laws 1941, and when the supplementary tax theretofore voted by it is insufficient to provide such contribution, the unit may impose a tax to raise funds for this purpose without submitting the question to a vote.

**10. Same—**

The charter provision of a city that the question of supplementing State funds for its public schools must be submitted to a vote, sec. 55 (4), ch. 366, Public-Local Laws 1939, does not require that when the city has assumed the burden of supplementing State funds a tax necessary to provide funds for contributions to the State Retirement Fund for salaries of teachers paid or supplemented by it should be submitted to a vote, the State Retirement Act not being in legal contemplation of the charter provision, and the charter provision being ineffective to prevent a levy required by the subsequent legislative mandate.

**11. Taxation §§ 1, 5:  State § 5a—**

A tax imposed to raise moneys required by law to be paid to the State Employees' Retirement Fund is for a public purpose, as having a definite relation to the efficient operation of the public school system, and the Act provides benefits to thousands of teachers and employees of this State without discrimination, and therefore the tax does not offend Art. V, sec. 3, of the State Constitution.

**12. Constitutional Law § 6b—**

The courts should not declare an act of the General Assembly unconstitutional unless it is so beyond a reasonable doubt.

STACY, C. J., not sitting.

BARNHILL, J., concurring.

WINBORNE, J., joins in concurring opinion.

APPEAL by plaintiffs from *Olive, Special Judge,* 16 March, 1942. From MECKLENBURG.  Affirmed.

This action was brought by plaintiffs, taxpayers of the city of Charlotte, against the defendants, in the several capacities indicated, to enjoin further levy and collection of local taxes for contribution to the State Retirement Fund under chapter 25, Public Laws of 1941, as amended by chapter 143, Public Laws of 1941, known as the Teachers' and State Employees' Retirement Act, and to restrain defendants from paying out taxes already levied and collected for that purpose.

The Board of Trustees Teachers' and State Employees' Retirement System was made a party to the action by consent, and was permitted to adopt the answer of its codefendants.

The Act referred to provides for a retirement fund for teachers in the public schools, a part of which is raised out of public funds and a part by deductions from teachers' salaries. By its terms, local administrative units which supplement the items of school expense and conduct schools of a higher standard or longer term than those afforded by State support for the eight months term are required to contribute proportionally to the State fund, and the taxing authorities therein are required to provide the necessary funds therefor. Pertinent sections are as follows:

"Each Board of Education of each county and each Board of Education of each city, and the employer in any department, agency or institution of the State, in which any teacher receives compensation from sources other than appropriations of the State of North Carolina shall deduct from the salaries of these teachers paid from sources other than State appropriations an amount equal to that deducted from the salaries of the teachers whose salaries are paid from State funds, and remit this amount to the State Retirement System. City Boards of Education and County Boards of Education in each and every county and city which has employees compensated from other than the State appropriation shall pay to the State Retirement System the same per centum of the salaries that the State of North Carolina pays: Provided, that for the purpose of enabling the County Boards of Education and the Board of Trustees of city administrative units to make such payment, the tax levying authorities in each such city or county administrative unit are hereby authorized, empowered and directed to provide the necessary funds therefor." Chapter 25, Public Laws of 1941, section 8, subsection (c).

Section 1, chapter 143, Public Laws of 1941, adds:

"Provided, that it shall be within the discretion of the County Board of Education in a county administrative unit and the Board of Trustees in a city administrative unit, with the approval of the tax levying authorities of such unit, to provide for the payment from local tax funds of any amount specified in subsection (c) of this section in excess of the

amount to be paid to the Retirement System on the basis of the State Salary Schedule and term. In case the salary is paid in part from State funds and in part from local funds, the local authorities shall not be relieved of providing and remitting the same per centum of the salary paid from local funds as is paid from State funds. In case the entire salary of any teacher, as defined in this Act, is paid from county or local funds, the county or city paying such salary shall provide and remit to the Retirement System the same per centum that would be required if the salary were provided by the State of North Carolina."

The Charlotte city schools were operated under special charter until the enactment of the School Machinery Act of 1933, chapter 252, Public Laws of 1933. Thereafter the Charlotte district was set up as a city administrative unit for the purpose of operating schools under that Act, and has since continued as such city administrative unit.

The School Machinery Act of 1933, pertinent features of which were re-enacted in 1935 and in 1939, contains the following provisions:

"That the county board of education in any county administrative unit and the board of trustees in any city administrative unit, with the approval of the tax levying authorities in said county or city administrative unit and the State School Commission, in order to operate the schools of a higher standard than those provided for by State support, but in no event to provide for a term of more than 180 days, may supplement any object or item of school expenditure: PROVIDED, that before making any levy for supplementing State budget allotments an election shall be held in each administrative unit to determine whether there shall be levied a tax to provide said supplemental funds, and to determine the maximum rate which may be levied therefor." Section 17.

Following the procedure laid down in the Act, the Charlotte City Administrative Unit, on 23 March, 1935, voted supplements to State support of the schools, fixing the maximum tax limit for that purpose at twenty-five cents on the one hundred dollar property valuation, and proceeded to conduct a nine months school term and to pay teachers' salaries.

The local school board filed its supplementary budget for the fiscal year beginning 1 July, 1941, providing for the expenditure of the entire special tax under the 25c levy for purposes other than the payment of the required sums to the Teachers' Retirement Fund, and requested that the sum budgeted in connection with the Retirement Fund, approximately $17,124.75, be raised from sources other than the 25c special school levy. The levy was made and the taxes partially collected, and the authorities concerned propose to proceed with the collection of the rest of the taxes and to make the required contribution to the State Retirement Fund, if not contrary to law.

The plaintiffs obtained a temporary restraining order, and on the hearing of the order to show cause before Olive, Special Judge, the injunction was dissolved and plaintiffs appealed.

*Taliaferro & Clarkson for plaintiffs, appellants.*

*Tillett & Campbell, Attorney-General McMullan, and Assistant Attorney-General Patton for defendants, appellees.*

SEAWELL, J. No exception was made in the court below to the manner in which this suit is constituted, or to want of capacity of some of the defendants, as sued, in relation to the subject matter of the action. No doubt the parties desired a decision more broadly dealing with the merits of the case, as voiced by the challenge to the constitutionality of the Retirement Act and its interpretation in connection with related statutes, particularly the tax limitation adopted by popular vote for supplements under the School Machinery Act. We review the case in that light.

But the joinder of parties defendant and the capacity in which they are sued suggest that plaintiffs considered themselves as dealing with an attempted exercise of authority by the city of Charlotte as a municipality and with the "Board of School Commissioners of the City of Charlotte," formerly an agency of the municipality, as a corporate body retaining the relation to the schools in that district given it in the special act of incorporation. That is not the case. The present situation will be much less confusing if we remember that the Charlotte School District, operating as a special charter district, came squarely within the revolutionary fiat of section 4, chapter 562, Public Laws of 1933: "All school districts, special tax, special charter or otherwise, as now constituted for school administration or for tax levying purposes, are hereby declared non-existent." Under the further provisions of this Act, the Charlotte district became a city administrative unit, and the trustees of the former district were retained only as the local administrative body of that unit, shorn of all administrative authority other than that which they get from the School Machinery Act. This concession was made to the governing body of the old district, no doubt, to cushion the shock of total liquidation and out of deference to the importance of the trusts that had been committed to them—the magnitude of the schools—and to conserve the experience and interest built up in administration. But here the old regime ended and the new dispensation began. The unit was now a part of the Public School System and henceforth an agency of the State. In this is found the principle upon which our decision must rest. Its application will be as brief as a full understanding of the subject will permit.

After careful study of the subject through many years prior to 1941, a Commission was appointed (H. R. 48, Public Laws of 1939), which made a thorough investigation and reported its findings and recommendations to the General Assembly of 1941, which thereupon enacted chapter 25, Public Laws of 1941, as amended by chapter 143, Public Laws of 1941, which is known as the "Teachers' and State Employees' Retirement Act." The purpose of that Act is to provide benefits on retirement for the teachers in the public school system of the State and for State employees. It is based not only upon the principle of justice to poorly paid State employees, but also upon the philosophy that a measure of freedom from apprehension of old age and disability will add to the immediate efficiency of those engaged in carrying on a work of first importance to society and the State. The fund for final distribution on retirement is contributed in part by the State from public funds, and in part by deductions from teachers' and employees' salaries. County administrative units and city administrative units which supplement State support of the eight months school term to secure schools of higher standard or longer term are required to contribute to the State Retirement Fund. The Act makes no provision for submitting the question of local taxation to popular vote.

The plaintiffs contend that the law is unconstitutional and invalid; that the expenditure required comes within the purview of Article VII, section 7, of the Constitution, prohibiting taxation by a municipality, except for a necessary expense, without submitting the question to a popular vote; that if the payment out of the Retirement Fund is not salary, the law is offensive to Article I, section 7, of the Constitution, which provides that no man or set of men are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services; and that if in the nature of salary, it necessarily comes within the purview of the 1933 School Machinery Act as a part of the supplements heretofore approved by popular vote, subject to the 25c on the $100 limitation on the tax rate heretofore adopted. There is a further contention that the Act contravenes Article V, section 3, of the Constitution as being inequitably levied and not for a public purpose. We consider these objections as nearly in that order as convenience permits.

1. The Constitution of North Carolina recognizes that it is the duty of the State to establish and maintain "a general and uniform system of public schools, where tuition shall be free of charge to all children of the State between the ages of six and twenty-one years." Constitution, Article IX, section 2. Under Article IX, section 3, the State is required to be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in the year.

For a long period of its history, the State performed this duty by proxy, maintaining the schools through the agency of the counties; and Article IX, section 3, of the Constitution, denounces as a criminal offense the failure of their tax levying bodies to comply with the requirement that the schools be maintained at least six months in the year.

The plea that the levy of such a tax by a county, without submission to popular vote, is prohibited by Article VII, section 7, of the Constitution, as not being for a necessary expense was raised and settled in *Collie v. Commissioners,* 145 N. C., 170, 59 S. E., 44, by the declaration that the requirement that the public schools be maintained is a mandate of a co-ordinate article of the Constitution of equal dignity and force, and must be obeyed; and that Article VII, section 7, had no relation by way of limitation on the taxing power exercised for that purpose. Three of the Justices of the great Court which decided this case, in separate concurring opinions, wrote their names upon this monument to our educational progress.

There was in the mind of the Court a clear comprehension of the functions and powers of the State and of the agencies set up to perform this duty, and there was no confusion at any time as to where the ultimate duty and power was seated; and none, we think, as to the consequences which must follow a delegation of this duty and power as a matter of convenience of administration to the agencies selected. Nor should there be any doubt today that maintenance of the public schools and the furnishing of those things which are reasonably essential to that end are within the mandatory provision of the Constitution, unaffected by the "necessary expense" provision contained in the municipal section of the Constitution.

The State is not a municipality within the meaning of the Constitution. It seems to us self-evident that it may perform the duties required of it by the Constitution, as well as exercise those powers not otherwise prohibited, without embarrassment by constitutional limitations expressly operating on municipalities alone. Const., Art. IX, secs. 2, 3; Const., Art. VII, sec. 7. The public school system, including all its units, is under the exclusive control of the State, organized and established as its instrumentality in discharging an obligation which has always been considered direct, primary and inevitable. When functioning within this sphere, the units of the public school system do not exercise derived powers such as are given to a municipality for local government, so general as to require appropriate limitations on their exercise; they express the immediate power of the State, as its agencies for the performance of a special mandatory duty resting upon it under the Constitution, and under its direct delegation.

This view is clearly expressed in *Frazier v. Commissioners,* 194 N. C., 49, 61, 138 S. E., 433, from which we quote:

"Schools established and maintained by a county, city, town, or other municipal corporation *under a special act of the General Assembly* are not necessarily included within the State system of public schools. It has, therefore, been uniformly and consistently held by this Court that Article VII, sec. 7, of the Constitution is applicable to bonds issued and taxes levied by a county, city, town, or other municipal corporation for this purpose . . . These decisions, however, are not determinative of the question here presented for decision. The Constitution of North Carolina does provide—and its provisions in that respect have been held mandatory—that the General Assembly shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one, Article IX, sec. 2; and that to accomplish this end, the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year, Article IX, sec. 3. It cannot be too often emphasized that the controlling purpose of the people of North Carolina, as declared in their Constitution, is that a State system of public schools shall be established and maintained—a system of schools supported by the State, and providing for the education of the children of the State—and that ample power has been conferred upon the General Assembly to make this purpose effective . . . The counties of the State are authorized by this statute (County Finance Act) to issue bonds and notes for the erection of schoolhouses and for the purchase of land necessary for school purposes, and to levy taxes for the payment of the same, principal and interest, *not as municipal corporations,* organized primarily for purposes of local government, *but as administrative agencies of the State,* employed by the General Assembly to discharge the duty imposed upon it by the Constitution to provide a State system of public schools. The limitations of Article VII, sec. 7, are not applicable to bonds or notes issued by a county, as an administrative agency of the State, under authority conferred by the County Finance Act, for the purpose of erecting schoolhouses, and equipping same, or purchasing land necessary for school purposes. We, therefore, hold that the board of commissioners of any county in the State, upon compliance with the provisions of the County Finance Act, has authority and is empowered to issue bonds or notes of the county for the purpose of erecting and equipping schoolhouses and purchasing land necessary for school purposes, and to levy taxes for the payment of said bonds or notes, with interest on the same, without submitting the question as to whether said bonds or notes shall be issued or said taxes levied, in the first instance, to the voters of the county, where such schoolhouses are re-

quired for the establishment or maintenance of the State system of public schools in accordance with the provisions of the Constitution."

To the same effect are *Owens v. Wake County*, 195 N. C., 132, 136, 141 S. E., 546; *Lacy v. Bank*, 183 N. C., 373, 380, 111 S. E., 612; *Lovelace v. Pratt*, 187 N. C., 686, 689, 122 S. E., 661; *Tate v. Board of Education*, 192 N. C., 516, 520, 135 S. E., 336.

From these cases, as well as from the reasoning of the matter, we gather a clear impression that whatever may be the limitations on a municipality with respect to its ordinary government under Article VII, sec. 7, they do not apply to it as an authorized agency in connection with the public school system; and that they do not, in fact, apply to any agencies as school administrative bodies, some of which, indeed, have no municipal functions to becloud the issue. In many city administrative units, the boundaries of the unit do not coincide with the city limits.

Attention should be directed to the distinction drawn in the decisions between agencies created for administrative purposes within the public school system and charter districts incorporated by special acts of the Legislature and empowered to maintain and conduct schools independently of it, which do not proceed on the authority as it comes from the State, through Article IX of the Constitution. *Frazier v. Commissioners, supra; Owens v. Wake County, supra.* Such independently operating schools were abolished by chapter 562, Public Laws of 1933, sec. 4, along with all other taxing districts—doubtless with the intent to bring all such activities within the public school system, and to secure uniformity and equality of opportunity into the school effort throughout the State. The city administrative unit and the county administrative unit, administrational devices first adopted in this Act, are not allied to such specially incorporated schools. They are, as the name implies, units within the public school system—established agencies of the State to carry on the then existing functions of the public school system, and logical and convenient agencies for investment with further power and duties as might be found expedient or necessary.

The suggestion that the Retirement Plan and payments of benefits thereunder are intrinsically not necessary purposes for maintaining the public school system is no doubt advanced under the same contention that taxation and expenditure under the Retirement Act must necessarily come within the limitation of Article VII, sec. 7, of the Constitution—a proposition we are compelled to reject for the reasons above stated; but we have the implied suggestion that they do not have that relevancy to the purposes expressed in Article IX of the Constitution that would bring them within that authority.

The extent to which the measures provided in the Retirement Act may be auxiliary to the efficient administration of the public school

system and justified as a measure of justice for those engaged therein is primarily, and in this instance we think wholly, for the Legislature. The evidence before that body indicated that they are highly important and effective in improving, stabilizing and maintaining standards of service in an underpaid and overburdened profession, which is now sustained by high idealism and sacrifice as much as by the meager pay.

We understand that what courts appropriately refer to as the "mandate" of Article IX of the Constitution carries with it not merely the bare necessity of instructional service, but all facilities reasonably necessary to accomplish this main purpose. And in this respect the word "necessary" has long been regarded as a relative, not an exigent, term—certainly not one which may be used to drain the life and substance out of a project with which it is connected, but one which itself must accept an interpretation consonant with the reasonable demands of social progress. We do not differ with the General Assembly in its policy as expressed in this legislation, but we point out that the matter is exclusively within the province of that body. It is their verdict, embodied and expressed in the Act, that the Retirement Plan has a definite relation to the just and efficient administration of the public school system which brings it within the scope of constitutional authority. Under the mandatory provisions of the Retirement Act, the public policy thus expressed is applied to the entire public school system and its administration at the hands of every administrative unit within it. After all, it is difficult to see how any want of relevancy, even if it could be supposed to exist, would bring the subject within the purview of Article VII, sec. 7, of the Constitution.

It is true, as suggested, that the city administrative unit, under the provisions of the School Machinery Act, voluntarily undertook to supplement certain items of State expenditure and thereby undertook to conduct a school of higher standard and longer term than that provided by State support. But once having assumed the burden, albeit voluntarily, the unit did not thereby separate itself from the school system, or break the thread of constitutional authority, or exempt itself from the consequences of the burden it assumed, or the additional trusts imposed by law.

The provision in the School Machinery Act under which a local unit desiring to supplement State support for the schools is required to submit the question to a popular vote is not in deference to Article VII, sec. 7, of the Constitution. It is simply the legislative adoption of a similar method of control over extravagant expenditure *pro hac vice*. It does not affect the status of the administrative unit as an agency of the State. And when the burden is assumed, the Act under consideration not only confers authority, but is mandatory in its provisions that

16—221

the local administrative unit make its contribution to the State Retirement Fund, and that the taxing authorities therein provide the necessary funds. Chapter 25, Public Laws of 1941, sec. 8 (c); chapter 143, Public Laws of 1941, sec. 1.

The theory that the obligation of the Constitution extends no further than the six months school term, the minimum requirement expressed in Article IX, sec. 3, is unsound. The mandate is expressed in its simplest and most comprehensive form in sec. 2, without qualification or limitation, except that implied from the ability of the State to respond. The State does, from its ordinary revenues, support an eight months school term under the 1933 Act, without impeachment of exceeding its power. Indeed, the situation would remain unchanged if there were no constitutional requirement at all, since, without it, the duty of the State to educate its citizens has been recognized amongst intelligent and civilized peoples from antiquity. It is no doubt written into the fundamental law so that it may survive political indifference and so that the humblest citizen, speaking for himself and those in like right, may demand its performance. It is merely a question of transmitting authority to a lawfully designated agency, and of the quality and extent of the power so delegated.

2. The plaintiffs argue that unless the payment out of the Retirement Fund is in the nature of a salary, it is a gratuity and offensive to Article I, sec. 7, of the Constitution, which provides that no man or set of men are entitled to exclusive or separate emoluments or privileges from the community, but in consideration of public services.

It is conceded by the plaintiffs that if payment from the fund is in the nature of salary or compensation for services rendered, it is at least not offensive to Art. I, sec. 7, of the Constitution.

We do not have to decide whether the cited section of the Constitution narrows its exception to payment for services currently rendered. The appellants are content to have the payments from the Retirement Fund, hypothetically, at least, regarded as deferred payments of salary. The appellees argue, and sustain the argument, we think, by convincing authority from jurisdictions where the question has been raised, that the benefits from the Retirement Fund may be so regarded. *Schieffelin v. Berry,* 217 App. Div., 451, 216 N. Y. Supp., 367; *People ex rel. Kroner v. Abbott,* 274 Ill., 380, 113 N. E., 696; *Cobbs v. Home Ins. Co.,* 18 Ala. Ap., 206, 91 So., 627; *Whitehead v. Davie,* 189 Cal., 715, 209 Pac., 1008; *Talbott v. Independent School District of Des Moines,* 230 Iowa, 949, 299 N. W., 556; *Retirement Board v. McGovern,* 316 Pa., 161, 174 Atl., 400.

3. It is conceded that the contribution of the unit to the State Retirement Fund might be paid out of local funds collected under the 25c levy

made to supplement State support if more convenient, but the taxes imposed under the 1941 Act are not subject to such limitation. There is no reference in either Act from which such an inference would be justified. Comparing the two laws, we find them widely separated in time and directed to substantially different subjects. If, as conceded by plaintiffs, the funds raised under authority of each of them are for generically similar purposes—operational in character—there is sufficient difference between them to justify the conclusion that the contributions required by the Retirement Act are not within the contemplation of the 1933 Act. The items then to be supplemented were definitely known and recognized, and were of a character totally different from the Retirement Fund contribution under the 1941 Act. So different is the latter, in fact, that it constitutes an entirely new feature of social and economic philosophy wrought into the public school system less than two years ago—in form, substance and effect unlike anything theretofore contemplated.

Moreover, the funds so collected are not supplemental in character and are not locally expended. They go into a general State fund, out of which payments are made irrespective of the source of origin.

We are likewise of the opinion that the contemplated levy is not limited or controlled by section 55 (4) of the City Charter—chapter 366, Public-Local Laws of 1939. The provision there is:

"The City Council of the City of Charlotte shall levy an annual tax for the support and maintenance of said public schools in the City of Charlotte in accordance with the Public Laws of the State of North Carolina as the same may now or hereafter be enacted and in any amount which is now or may hereafter be approved by a vote of the people of said city for said purposes."

We do not think that the subject dealt with in the Retirement Act of 1941 was within legal contemplation of this law. At most, it gives authority for further taxation in the support of schools as might be approved by a vote of the people, but does not prevent a levy under an appropriate State law, irrespective of the statute. We regard the point as settled adversely to appellants' contention by *Julian v. Ward,* 198 N. C., 480, 152 S. E., 401.

4. The challenge to the Retirement Act as contravening Article V, sec. 3, of the Constitution is not supported by argument or citation of authorities. Perhaps the inequalities which are pointed out by the appellants, and which we do not regard as inequities, may be corrected by further experience in the administration of the Act.

The contention that the Act does not comprehend a public purpose cannot be sustained. If the Retirement Plan has that relation to the public school system which the legislative policy supposes it to have, and

this can be reasonably discerned, giving the legislative body the "benefit of the doubt," if any, the Act is sufficiently invested with a public purpose and the tax is valid. It should not be declared unconstitutional unless it is so beyond reasonable doubt. *Hood, Comr. of Banks, v. Realty, Inc.,* 211 N. C., 582, 191 S. E., 410; *Glenn v. Board of Education,* 210 N. C., 525, 187 S. E., 781.

The Act includes thousands of teachers and employees of the State, as a class and without discrimination. If this is not sufficient to satisfy the "public purpose" requirement of the Constitution, the benefit they receive may be regarded as incidental. The benefit to the general public comes from a policy, widely approved, and adopted here, not without careful and exhaustive study, and with appreciation of its effect upon the entire citizenry, in the enhancement of the State's largest and most important enterprise, the conduct of the public schools. The relation of the Retirement Plan to the public school system has been fully discussed above, and the discussion will not be repeated here. It is sufficient to say that the expected improvement in standards of service, and the stabilization of teacher employment, are sufficient to constitute a public purpose, and justify the imposition of the tax.

We conclude that the Act is a constitutional and valid expression of the legislative will, both generally and in its application to the local administrative units with which it deals. The contribution to the State Retirement Fund required of the Charlotte City Administrative Unit is mandatory in character, does not require submission to popular vote, and is not affected by the maximum tax rate heretofore adopted by this unit in voting supplements to the schools or the suggested limitations of the city charter.

The acting defendants are in the exercise of lawful powers and are not subject to judicial restraint.

The judgment of the court below is
Affirmed.

STACY, C. J., not sitting.

BARNHILL, J., concurring: The majority opinion concludes that the Teachers' and State Employees' Retirement Act of 1941 is Constitutional and that the special levy of 2c by the tax-levying authorities of Charlotte to provide for the payment of the local employer's contribution to the retirement fund is valid. I concur. In so doing I wish to comment on the question of the validity of the tax.

Article IX, section 2, of the Constitution provides a floor, a minimum —not a maximum. *Frazier v. Comrs.,* 194 N. C., 49, 138 S. E., 433; *Taylor v. State Board of Education,* 206 N. C., 263, 173 S. E., 608;

*Fuller v. Lockhart,* 209 N. C., 61, 182 S. E., 73. It is the duty of the Legislature, under the mandate of the Constitution, to establish and maintain, within the means of the State, "a general and uniform system of public schools." The schools thus provided must be maintained for a minimum term of six months each year. Subject to this limitation the discretionary power to determine what is necessary and adequate and within the means of the State rests in the General Assembly. Any reasonable expense incurred to this end may be met by taxation without a vote of the people. *Evans v. Mecklenburg County,* 205 N. C., 560, 172 S. E., 323.

In the performance of this duty the Legislature enacted ch. 562, Public Laws 1933, providing for a State-wide, uniform system of public schools for a term of eight months. This act creates two types of local administrative units—county and city. The city unit, in respect to schools, has the same rights, powers and duties, and operates and is dealt with, as a county. Section 4, ch. 562, Public Laws 1933. The city as an administrative unit and the municipality as such are treated as separate entities.

Any local administrative agency, with the approval of the tax-levying authorities within the agency and the State School Commission, in order to operate schools of a higher standard than those provided by the State support, may supplement any object or item of school expenditure, including an extended term not exceeding a total of 180 days. The tax levy to provide the funds with which to supplement must first be approved by the electorate. The amount raised by taxation becomes a part of the total allotment for operational expenses and must be budgeted and approved by the State School Commission. Section 17. The funds of the unit, including the part raised by local taxation, is audited by the school authorities, section 20 (2), and are disbursed under the regulatory provisions of the statute.

Hence, it appears that the State supported school within the local administrative unit, as thus supplemented, does not, by virtue of the supplement, become a separate school entity. It remains an integrated part of the State School System. The discretion vested in the local authorities is the discretion to provide or not to provide higher standards, including an extended term. The "school of higher standards," once established, remains a part of the State-wide system under the general supervision of the State School Commission until the special levy is revoked or changed by an election. Section 17.

Having elected to supplement and to provide an extended term of higher standard the local unit "comes in" *cum onere.* It must bear its proportionate part of the burdens then existing or thereafter imposed upon the State system as a necessary part thereof.

Is the "Retirement System" created by ch. 25, Public Laws 1941, as amended by ch. 143, ·Public Laws 1941, an integral part of the State School System? The answer is yes.

The Retirement payment provided by this Act constitutes delayed compensation in consideration of services rendered. It is compensation for public services. Its purpose is to induce experienced and competent teachers to remain in service and thus promote the efficiency and effectiveness of the educational program. *S. v. Levitan,* 181 Wis., 326, 193 N. W., 499. The objective sought and the means adopted were within the legislative discretion of the General Assembly.

Any local administrative agency which has elected to supplement the State term under section 17 of the 1933 Act must comply with the provisions of the Retirement Act. The language of the 1941 statute is mandatory. ". . . each board of education of each city . . . in which any teacher receives compensation from sources other than appropriations of the State of North Carolina shall deduct from the salaries of these teachers paid from sources other than State appropriations an amount equal to that deducted from the salaries of the teachers whose salaries are paid from State funds, and remit this amount to the State Retirement System. City Boards of Education . . . in each . . . city which has employees compensated from other than the State appropriation shall pay to the State Retirement System the same per centum of the salaries that the State of North Carolina pays." Section 8, (1) (c), Public Laws 1941. The taxing authorities within the agency must provide the funds necessary to pay the local employer's contribution and "for the purpose of enabling . . . the Board of Trustees of city administrative units to make such payment, the tax levying authorities in each such city . . . unit are hereby authorized, empowered and directed to provide the necessary funds therefor." Section 8, (1) (c). Public funds ordinarily are raised by taxation and this language not only empowers the taxing authorities in the local units to levy the necessary tax but it compels it. In my opinion this is the only construction the language permits.

It was argued here that by ch. 143, Public Laws 1941, the local agency was granted discretionary authority to accept or reject the provisions of the Retirement Act. I do not so read this statute. It gives the local agency authority "with the approval of the tax levying authorities of such unit, to provide for the payment from local tax funds of any amount specified in subsection (c) of this section (section 8, [1] [c], ch. 25, Public Laws 1941), in excess of the amount to be paid to the Retirement System on the basis of the State Salary Schedule and term." In the event the local agency has sufficient funds derived from the levy under the 1933 Act with which to make its contribution without any additional

levy the agency, with the consent of the tax-levying authorities in the unit, may pay its contribution out of this fund without resorting to an additional levy. This, and nothing more, is the meaning of this amendatory provision.

It is well to note that this same Act provides that "in case the salary is paid in part from State funds and in part from local funds, the local authorities shall not be relieved of providing and remitting the same per centum of the salary paid from local funds as is paid from State funds. In case the entire salary of any teacher, as defined in this Act, is paid from . . . local funds, the . . . city paying such salary shall provide and remit to the Retirement System the same per centum that would be required if the salary were provided by the State of North Carolina." Here again the Legislature makes participation by the local agency which has supplemented the State term compulsory.

It follows that the tax levied for the purpose of enabling the Charlotte School District to comply with the requirements of section 8, (1) (c), of ch. 25, Public Laws 1941, is authorized by the Legislature. *Tate v. Board of Education,* 192 N. C., 516, 135 S. E., 336. It was levied for an administrative agency of the State School System established by the General Assembly pursuant to Article IX of the Constitution. *School Committee v. Taxpayers,* 202 N. C., 297, 162 S. E., 612; *Frazier v. Comrs., supra.* It was levied to meet a necessary part of the operational expenses of the State School System. *Greensboro v. Guilford County,* 209 N. C., 655, 184 S. E., 473. Under all our decisions the levy was a valid exercise of the taxing power of the State.

WINBORNE, J., joins in concurring opinion.