HARRIS *v.* BOARD OF COMMISSIONERS.

---

E. H. HARRIS, LOMER DAVENPORT, RAMONA DAVENPORT, C. W. HARRIS, ELIZABETH HARRIS, AND HARLIN PATRICK, v. THE BOARD OF COMMISSIONERS OF WASHINGTON COUNTY AND THE INDIVIDUAL MEMBERS THEREOF, NAMELY, W. R. OWENS, P. B. BROWN, H. W. PRITCHETT, J. C. HASSELL, W. W. WHITE, AND RALPH HUNTER, TAX COLLECTOR OF WASHINGTON COUNTY.

(Filed 22 May 1968.)

**1. Appeal and Error §§ 6, 20—**

An immediate appeal does not lie as a matter of right from the denial of a motion to strike allegations in a complaint or from the overruling of a demurrer, the proper method for seeking an immediate review being a petition for a writ of *certiorari*. Court of Appeals Rule No. 4.

**2. Schools § 7—**

G.S. 115-116 provides a method by which the county commissioners may be compelled to call an election to obtain an additional tax levy for school purposes, but the county commissioners are not prohibited by the statute from levying an additional tax without a vote of the people for the purpose of supplementing teachers' salaries pursuant to G.S. 115-80(a).

**3. Schools §§ 5, 7—**

G.S. 115-80(b) merely provides budgetary procedures in instances where there has been an election to obtain a tax levy for school purposes and does not prohibit the county commissioners from levying an additional tax without a vote of the people for the purpose of supplementing teachers' salaries pursuant to G.S. 115-80(a).

**4. Schools § 7—**

The provision of G.S. 115-124 limiting the amount of supplemental taxes levied for operating schools of a higher standard than that provided by State support to the amount authorized by a vote of the people applies

only where there has been an election to obtain a tax levy and does not prohibit the county commissioners from levying an additional tax without a vote of the people for the purpose of supplementing teachers' salaries pursuant to G.S. 115-80(a).

**5. Schools §§ 1, 7;   Taxation § 6—**

In levying an additional tax for the purpose of supplementing teachers' salaries pursuant to G.S. 115-80(a), the board of county commissioners acts as an agency of the State under a delegation of authority from the General Assembly to carry out the duty imposed upon it by Article IX, § 2, of the Constitution of North Carolina, to maintain a system of public schools, and there is no requirement that such levy be submitted to a vote of the people, the limitations imposed by Article VII, § 6, being applicable solely to municipal corporations and not to agencies of the State.

APPEAL by plaintiffs and defendants from *Peel, J.,* 16 November 1967 Session WASHINGTON Superior Court.

The plaintiffs, as citizens, residents and taxpayers of Washington County, bring this action against the members of the Board of Commissioners of Washington County in their official capacity as the Board of Commissioners, and against Ralph Hunter as Tax Collector of Washington County, to permanently restrain the levy and collection of an increase of fifteen cents on the one hundred dollar property valuation in the county property tax rate. The plaintiffs allege this increase is for the purpose of securing funds to supplement teachers' salaries in Washington County Public Schools, and that the proposed increase was not submitted to a vote of the people of the county. The plaintiffs allege that the acts of the County Commissioners in this respect are illegal and unconstitutional.

The plaintiffs' amended complaint is set out in full as follows:

"1.  Plaintiffs are citizens, residents, taxpayers and property owners of Washington County, North Carolina, and act for themselves and other taxpayers similarly situated, and constitute a class of persons aggrieved and injured.

"2.  The defendant Board of Commissioners of Washington County are the duly elected, qualified and acting members of the Board of County Commissioners of Washington County, a body politic and corporate. The defendant, Ralph Hunter, is the duly qualified Tax Collector of Washington County, regularly appointed and serving in such position with the duties and authorities provided by law, which include the collection of taxes levied and assessed by the defendant Board of Commissioners.

"3.  Pursuant to the duties imposed upon them by law, the

defendant members of the Board of County Commissioners of Washington County met in a duly called session on the night of Monday, April 24. The purpose of the meeting was to discuss the problems and needs of the schools of Washington County. A motion was made by Commissioner W. R. Owens to increase the tax rate 15¢ per $100.00 for the stated purpose of raising the educational level of the Washington County schools. After the said motion was made, a second to it was withheld pending a joint discussion with the Board of Education of Washington County.

"After such discussion, the motion was reput and carried by a vote of three to two. The motion did not provide that the people of Washington County, including these plaintiffs, should be given an opportunity to pass upon the 15¢ per $100.00 additional levy for the purpose of raising the educational level of Washington County schools, but contemplated that the levy should be authorized solely upon the action of the defendant Board of Commissioners.

"As will be hereinafter more particularly set out, such action was contrary to the Statutory Law of the State of North Carolina, or if not so contrary, then it constituted a violation of Article 7, Section 6 of the Constitution of North Carolina and such action does not come within the purview of Article 9, Section 2. That such attempt to levy taxes is without an affirmative vote of the people of Washington County and such act is illegal, invalid and for an unauthorized purpose.

"4. The next meeting of the defendant Board was held on May 1, 1967. Minutes were duly adopted, the second paragraph of which consisted of the following sentence, 'The Board read and acknowledged the many letters and resolutions from citizens and organizations in the County that were sent in support of the 15¢ per $100.00 tax increase for education.' That the educational purpose which the 15¢ increased levy was supposed to accomplish was an increase in teachers's (sic) salaries in the Washington County schools for the school year 1967-68 ranging from approximately $100.00 per teacher to approximately $125.00 per teacher.

"Thereafter on May 19, 1967 the defendant Board met again for the stated purpose of accepting tentative gudgets (sic), including the school budget for 1967-68. That attached to the minutes of said meeting is a local school fund budget which same disclosed an increase of $20,932 for instructional services. That it had been stated in the discussion concerning the raise

in teachers's (sic) salaries by all the Commissioners that the primary purpose of such increased levy was to furnish funds for the said increase in the teachers's (sic) salaries and in effect that was and is the said purpose.

"5. The defendant Board met next on June 5, 1967. The minutes of said meeting reveal that delegations were heard in support of the increased levy of 15¢ per $100.00 on the grounds that it was needed for better education. No further action was taken at the said meeting. The next meeting of the defendant Board was held on July 10, 1967. At said meeting a motion was made by Commissioner W. R. Owens, seconded by Commissioner P. W. Brown and supported by Commissioner W. W. White to the effect that a letter dated July 10, 1967 from the Washington County Board of Education to the County Commissioners shows a necessity and peculiar local condition to necessitate a supplement to the current expense fund. That the said letter was dated July 10, 1967 and was on the subject, 'Additional Request of Funds to Raise the Educational Level in Washington County Schools — April 24, 1967.'

"That the letter or communication further stated, 'That necessity has been shown to the Board of County Commissioners on the above mentioned date at the several meetings since then that the public schools in Washington County have unusual and great needs beyond the regular needs as listed below.' That the said listing below undertook, among other things, to show the necessity of supplementing teachers's (sic) salaries. That as previously alleged and set out, the main purpose of the request for additional funds to be derived from a 15¢ increase in the tax levy was to supplement school salaries and that the remaining purposes were, to use the words of the letter, 'Beyond the regular needs.'

"That at the said meeting the resolution above referred to was carried by a vote of three to two. Thereafter at the same meeting, the 1967-68 county budget with a levy of $1.85 per $100.00 was approved and accepted.

"6. That an examination of the said budget adopted at the meeting described in the preceding paragraph, and which same is attached to the minutes of said meeting, shows that the tax levy in the county has increased 15¢ on the $100.00 assessed evaluation from $1.70 in 1966-67 to $1.85 in 1967-68 and the items bringing about the said increase consists of supplements to teachers's (sic) salaries and as so labeled as supplements in the local school budget current expense fund.

"7. That the attempt to levy a supplemental tax of 15¢ on the $100.00 purportedly authorized by the defendant Board at its April 24, 1967 meeting and included in the budget for the school year 1967-68 at the July, 1967 meeting of the Board, is in violation of the Statutory Laws of the State of North Carolina and in particular General Statute 115-116 which provides in substance that when voters authorize funds for school supplement purposes by approving them in an election, such funds may be used for any object of expenditure for supplemental purposes. That the procedure set out in the said Statute is exclusive for the proper and legal authorization of the expenditure of funds for the purpose of supplementing teachers's *(sic)* salaries and particularly the supplement here proposed by the defendant board. That no provision has been made for the calling of an election by the defendant Board or by any other legally constituted authority of Washington County and that none is intended; but that the defendant Board of Commissioners are undertaking to collect a 15¢ on the $100.00 additional levy for the purpose of supplementing teachers's *(sic)* salaries without the use of the procedure provided in G.S. 115-116, and in defiance of the provisions thereof.

"8. That the attempted levy by the defendant Board hereinbefore described and identified is in violation of another provision of the Statutory Laws of the State of North Carolina, namely G.S. 115-224 which in substance provides that the tax levying authorities of the county may not levy taxes exceeding the amount of a tax levy authorized by a vote of the people. That such action is a clear violation of the provisions of this Statute.

"9. That the said attempted levy hereinbefore described is a violation of another of the Statutory Laws of North Carolina, namely G.S. 115-80(b). That this said Statute provides that in order to operate schools of a higher standard than that provided by state support, County Boards of Education shall file a budget not in excess of the rate voted by the people in their said county. That as aforesaid, the purpose for which the 15¢ on the $100.00 levy is made is for the purported purpose of operating schools of a higher standard than that provided by state support. That the same is shown on the current expense fund subhead of the local school fund budget for 1967-68 of Washington County and is identified therein as supplements to salaries of teachers.

"10. That the defendant Board has attempted to disguise its illegal additional 15¢ on the $100.00 levy, which same is made as previously alleged for an unauthorized purpose, by a typewritten notation at the bottom of page one of its local school fund budget which reads as follows, 'Appropriations for Codes 621-2 and 622-2 totaling $21,750 are to be derived entirely from non-tax funds listed in Codes 962 and 966-2 under sources of income.'

"That the said statement is tied by asterisks to and identifies sums set aside to supplement teachers's (sic) salaries. That the said Codes 962 and 966-2 are A.B.C. Funds and fines, forfeitures and penalties. That the said listing is a sham made for the attempted purpose of disguising the fact that the revenue to pay the said supplements is to be derived from the 15¢ additional tax levy.

"That the A.B.C. Funds in Washington County in years past and for the current year are paid directly into the General Fund after the expenses of law enforcement authorized by G.S. 18-45 have been met. That they have not been otherwise segregated and there has been no resolution of the said Board directing or authorizing their use for the purpose of school supplements. Even with the inclusion of the said A.B.C. Funds, there is not sufficient funds to make the said supplement and pay the other necessary expenses of Washington County without the 15¢ supplementary tax levy. That there is no authority for or legal method by which such segregation could be properly accomplished by the defendant Board for the school year 1967-68 and the same has not been legally so accomplished.

"11. That the defendant Board attempts to justify its illegal levy for an unauthorized purpose by stating that it relies upon G.S. 115-80, Subsection A, particularly as amended by Chapter 1263 of the Session Laws of 1967. That said amendment was not ratified until the 6th day of July, 1967 and the action of the Board which purports to furnish the authority for the said illegal levy for an unauthorized purpose was taken on April 24, 1967.

"12. That G.S. 115-80(a), even as amended, furnishes no Statutory authority for the imposition of the said levy for that the same must be read in conjunction with Subsection B of the same Statute, with G.S. 115-116 and other pertinent Statutes hereinbefore mentioned, and with the remainder of the said Chapter 115 of the General Statutes.

"13. That should the Court be of the opinion and so hold that the said Statute does furnish authority for the said 15¢ on the $100.00 levy, then the said Chapter insofar as it does purport to authorize such levy violates the Constitution of the State of North Carolina and in particular Article 7, Section 6 of the said Constitution which provides that no county shall levy or collect any tax except for the necessary expenses thereof unless approved by a majority of the electorate. The proposed levy hereinbefore described is not a necessary expense within the legal meaning of the term. That as aforesaid, no authorization has been given by the electorate for such supplemental levy. If the Court should be of the opinion that Statutory authority exists for such levy, then such Statutory authority directly contravenes Article 7, Section 6 of the Constitution of the State of North Carolina for the reasons stated.

"14. That the 15¢ tax levy or assessment is itself illegal and invalid and for an illegal and unauthorized purpose and the plaintiffs in their capacity as taxpayers of the unit in which the said tax is to be levied, namely Washington County, are, therefore, entitled to have the assessment and the collection of the same enjoined as provided by the laws of the State of North Carolina and in particular G.S. 105-406."

Plaintiffs applied for a restraining order pending final hearing. Defendants moved to strike certain portions of the complaint, and demurred to the complaint for failure to state a cause of action. Plaintiffs' application for a temporary restraining order, and the defendants' motion to strike and defendants' demurrer were heard by Judge Peel on 15 September 1967, on 29 September 1967, and on 4 October 1967. On 16 November 1967, Judge Peel entered an order wherein he made findings of fact from affidavits offered in evidence. He denied plaintiffs' application for a temporary restraining order, he denied defendants' motion to strike and overruled defendants' demurrer.

Plaintiffs and defendants appealed.

*Wilkinson and Vosburgh by John A. Wilkinson, attorneys for plaintiffs appellants-appellees.*

*Bailey and Bailey by Carl L. Bailey, Jr., and Norman, Rodman and Hutchins by R. W. Hutchins, attorneys for defendants appellants-appellees.*

*T. W. Bruton, Attorney General, and Ralph Moody, Deputy Attorney General, for the State as amici curiæ.*

BROCK, J. The Attorney General requested, and was granted, leave to file for the State a brief *amici curiæ* in this Court.

Defendants were not entitled to appeal as a matter of right from the Order denying their motion to strike or from the Order overruling their demurrer, but were entitled to an immediate review only upon allowance of a petition for writ of *certiorari.* Rule 4, Rules of Practice in the Court of Appeals of North Carolina. Even so, since plaintiffs have perfected their appeal, the entire case is before us; and this Court will consider the exceptions appearing in the record on appeal at this time.

### DEFENDANTS' APPEAL.

The defendants assert by their demurrer to the complaint that, admitting the truth of all factual averments well stated and all relevant inferences of fact reasonably deducible therefrom, the complaint fails to state a cause of action. If the complaint does not state a cause of action, the plaintiffs' application for a temporary restraining order was properly denied. 4 Strong, N. C. Index 2d, Injunctions, § 12, p. 414. Likewise, if the complaint does not state a cause of action, the overruling of defendants' motion to strike from the complaint is immaterial, although many allegations seem to be evidentiary and argumentative. Therefore, a determination of whether the complaint does or does not state a cause of action should be made first.

The main theme and impetus of the allegations of the complaint are that the County Commissioners, on July 10, 1967, passed a resolution finding that the County Board of Education had shown a "necessity and peculiar local condition to necessitate a supplement to the current expense fund" and had requested additional funds to supplement the current expense fund (paragraph 5); that the County Commissioners, on July 10, 1967, approved the request and passed a resolution to increase the county tax levy from $1.70 to $1.85 per $100.00 valuation to supplement teachers' salaries in the public schools of Washington County; and that this was done without submitting the question of the fifteen cent increase to a vote of the people (paragraphs 3, 4, 5 and 6). These allegations are admitted by the demurrer.

Effective 6 July 1967 the 1967 Legislature rewrote the last paragraph of G.S. 115-80(a) to read as follows:

> "Notwithstanding any other provisions of this chapter, when necessity is shown by county and city boards of education, or peculiar local conditions demand, for adding or supplementing items of expenditure in the current expense fund, *including additional personnel and/or supplements to the salaries of per-*

*sonnel,* the board of county commissioners may approve or disapprove, in part or in whole, any such proposed and requested expenditure. For those items it approves, *the board of county commissioners shall make a sufficient tax levy to provide the funds:* Provided, that nothing in this chapter shall prevent the use of federal or privately donated funds which may be made available for the operation of the public schools under such regulations as the State Board of Education may prescribe." (Emphasis added.)

If the foregoing grant of authority to tax is not violative of the Constitution of North Carolina, or contradictory of some other statute, the action of the County Commissioners in increasing the tax levy seems authorized.

The plaintiffs assert that the increased levy without a vote of the people violates the provisions of G.S. 115-116, and is therefore unlawful. G.S., Chap. 115, Art. 14 makes provision whereby various boards of education, as well as school committees of a district and the people in the area of a school system may petition for an election for various purposes. G.S. 115-116 defines the purposes for which an election may be called. G.S. 115-118 defines who may petition for an election. G.S. 115-119 spells out the information which must be contained in the petition. G.S. 115-120 requires the Board of Education to whom a petition may be addressed to give the petition due consideration. G.S. 115-121 requires the county commissioners (or the governing body of the municipality) to call an election upon petitions approved by the board of education. G.S. 115-122 through 115-124 provide the rules for such an election and the rules governing various matters following such an election. The clear intent of these statutes is to provide a method by which the county commissioners may be compelled to call an election to obtain a tax levy or for other purposes. None of these statutes would prohibit the county commissioners, upon a proper finding of necessity, from levying an additional tax to supplement the current expense fund for the purpose of supplementing teachers' salaries, if the county commissioners are otherwise authorized to do so.

The plaintiffs assert that the increased tax levy without a vote of the people violates the provisions of G.S. 115-80(b). This section is entitled "Supplemental Tax Budget" and merely provides for budgetary procedures in instances where there has been an election to obtain a tax levy. It in no way prohibits the county commissioners, upon a proper finding of necessity, from levying an additional tax to supplement the current expense fund for the purpose of sup-

plementing teachers' salaries, if they are otherwise authorized to do so.

Plaintiffs assert that G.S. 115-80(a) is unconstitutional because it violates Article VII, Section 6 (formerly Section 7), of the Constitution of North Carolina, and therefore can furnish no authority for the action of the county commissioners in levying the tax without submitting the question to a vote of the people. Article VII, Section 6 (formerly Section 7), of our Constitution is as follows:

"No debt or loan except by a majority of voters. — No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose. (Const. 1868; 1947, c. 34.)"

Constitutional limitations upon the independent powers of a county, city, town, or other municipal corporation is not the real question raised by this appeal. Under G.S. 115-80(a) a county operates under a delegation of authority from the General Assembly to carry out a function imposed upon the General Assembly by Article IX, Section 2 of the Constitution of North Carolina; therefore the real question is whether there is a constitutional limitation upon the authority of the General Assembly to authorize a tax levy to carry out its function of providing for a system of public schools. The pertinent parts of Article IX, Section 2, reads as follows:

"General Assembly shall provide for schools; separation of the races. — The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years. . . . (Const. 1868; Convention 1875.)"

In the case of *Bridges v. Charlotte*, 221 N.C. 472, 20 S.E. 2d 825, the Supreme Court was considering the constitutionality of a tax levy, which was not submitted to a vote of the people. The levy was made by the local governing authorities for the purpose of payments to be made to the State Retirement System for the teachers in the Charlotte school district. It was contended there that the tax was not for a necessary purpose and that the statute authorizing a levy for that purpose was unconstitutional. The tax levied was defended under the authority of Chapter 24, Public Laws of 1941, section 8,

subsection (c) (now codified as G.S. 135-8(b)(3)), which read in part as follows:

> "Provided, that for the purpose of enabling the County Boards of Education and the Board of Trustees of city administrative units to make such payment, the tax levying authorities in each such city or county administrative unit are hereby authorized, empowered and directed to provide the necessary funds therefor."

In passing upon the question in the *Bridges* case our Supreme Court said:

> "The plea that the levy of such a tax by a county, without submission to popular vote, is prohibited by Article VII, section 7, of the Constitution, as not being for a necessary expense was raised, and settled in *Collie v. Commissioners,* 145 N.C. 170, 59 S.E. 44, by the declaration that the requirement that the public schools be maintained is a mandate of a coordinate article of the Constitution of equal dignity and force, and must be obeyed; and that Article VII, section 7, had no relation by way of limitation on the taxing power exercised for that purpose. Three of the Justices of the great Court which decided this case, in separate concurring opinions, wrote their names upon this monument to our educational progress.
>
> "There was in the mind of the Court a clear comprehension of the functions and powers of the State and of the agencies set up to perform this duty, and there was no confusion at any time as to where the ultimate duty and power was seated; and none, we think, as to the consequences which must follow a delegation of this duty and power as a matter of convenience of administration to the agencies selected. Nor should there be any doubt today that maintenance of the public schools and the furnishing of those things which are reasonably essential to that end are within the mandatory provision of the Constitution, unaffected by the 'necessary expense' provision contained in the municipal section of the Constitution.
>
> "The State is not a municipality within the meaning of the Constitution. It seems to us self-evident that it may perform the duties required of it by the Constitution, as well as exercise those powers not otherwise prohibited, without embarrassment by constitutional limitations expressly operating on municipalities alone. Const., Art. IX, secs. 2, 3; Const., Art. VII, sec. 7. The public school system, including all its units, is under the exclusive control of the State, organized and established as its instru-

mentality in discharging an obligation which has always been considered direct, primary and inevitable. When functioning within this sphere, the units of the public school system do not exercise derived powers such as are given to a municipality for local government, so general as to require appropriate limitations on their exercise; they express the immediate power of the State, as its agencies for the performance of a special mandatory duty resting upon it under the Constitution, and under its direct delegation."

\*　　　\*　　　\*

"We understand that what courts appropriately refer to as the 'mandate' of Article IX of the Constitution carries with it not merely the bare necessity of instructional service, but all facilities reasonably necessary to accomplish this main purpose. And in this respect the word 'necessary' has long been regarded as a relative, not an exigent, term — certainly not one which may be used to drain the life and substance out of a project with which it is connected, but one which itself must accept an interpretation consonant with the reasonable demands of social progress. We do not differ with the General Assembly in its policy as expressed in this legislation, but we point out that the matter is exclusively within the province of that body."

In a concurring opinion in the *Bridges* case, Justice Barnhill had this to say:

"It is the duty of the Legislature, under the mandate of the ·Constitution, to establish and maintain, within the means of the State, 'a general and uniform system of public schools.' The schools thus provided must be maintained for a minimum term of six months each year. Subject to this limitation the discretionary power to determine what is necessary and adequate and within the means of the State rests in the General Assembly. Any reasonable expense incurred to this end may be met by taxation without a vote of the people."

We hold therefore that the action of the county commissioners, as described by the allegations of the complaint, does not violate the provisions of G.S. 115-116, nor G.S. 115-124 ·(alleged as 115-224 in the complaint), nor G.S. 115-80(b).

We also hold that the action of the county commissioners in in-creasing the county tax levy by fifteen cents on the one hundred dollar property valuation for the purpose of supplementing teachers' ·salaries without submitting the question of the levy to a vote of

the people, as alleged in the complaint, was authorized by G.S. 115-80(a).

In view of what has heretofore been said, we further hold that the last paragraph of G.S. 115-80(a), is authorized by N. C. Const., Art. IX, § 2, and does not violate the provisions of N. C. Const., Art. VII, § 6 (formerly § 7); and that the enactment by the General Assembly of the last paragraph of G.S. 115-80(a) was a constitutional enactment.

It follows that the conduct of the county commissioners, as described in the complaint and admitted by demurrer, was in compliance with a constitutional statute, and the plaintiffs have, therefore, failed to state a cause of action. The question of whether the budget allotments were changed becomes immaterial in the light of this holding.

The trial judge was correct in denying plaintiffs' application for a restraining order, but he was in error in overruling defendants' demurrer to the complaint. The demurrer should have been sustained and the action dismissed.

Upon plaintiffs' appeal, affirmed.

Upon defendants' appeal, reversed.

MALLARD, C.J., and PARKER, J., concur.