161 S.E.2d 213 (1968)
1 N.C. App. 258
E. H. HARRIS, Lomer Davenport, Ramona Davenport, C. W. Harris, Elizabeth Harris, and Harlin Patrick
v.
The BOARD OF COMMISSIONERS OF WASHINGTON COUNTY and the Individual Members thereof, Namely, W. R. Ownes, P. B. Brown, H. W. Pritchett, J. C. Hassell, W. W. White, and Ralph Hunter, Tax Collector of Washington County.
No. 68SC13.
Court of Appeals of North Carolina.
May 22, 1968.
*218 Wilkinson & Vosburgh, by, John A. Wilkinson, Washington, for plaintiffs appellants-appellees.
Bailey & Bailey, by, Carl L. Bailey, Jr., and Norman, Rodman & Hutchins, by, R. W. Hutchins, Plymouth, for defendants appellants-appellees.
T. W. Bruton, Atty. Gen., and Ralph Moody, Deputy Atty. Gen., for the State as amici curiae.
BROCK, Judge.
The Attorney General requested, and was granted, leave to file for the State a brief amici curiae in this Court.
Defendants were not entitled to appeal as a matter of right from the Order denying their motion to strike or from the Order overruling their demurrer, but were entitled to an immediate review only upon allowance of a petition for writ of certiorari. Rule 4, Rules of Practice in the Court of Appeals of North Carolina. Even so, since plaintiffs have perfected their appeal, the entire case is before us; and this Court will consider the exceptions appearing in the record on appeal at this time.

Defendants' Appeal
The defendants assert by their demurrer to the complaint that, admitting the truth of all factual averments well stated and all relevant inferences of fact reasonably deducible therefrom, the complaint fails to state a cause of action. If the complaint does not state a cause of action, the plaintiffs' application for a temporary restraining order was properly denied. 4 Strong, N.C. Index 2d, Injunctions, § 12, p. 414. Likewise, if the complaint does not state a cause of action, the overruling of defendants' motion to strike from the complaint is immaterial, although many allegations seem to be evidentiary and argumentative. Therefore, a determination of whether the complaint does or does not state a cause of action should be made first.
The main theme and impetus of the allegations of the complaint are that the County Commissioners, on July 10, 1967, passed a resolution finding that the County Board of Education had shown a "necessity and peculiar local condition to necessitate a supplement to the current expense fund" and had requested additional funds to supplement the current expense fund (paragraph 5); that the County Commissioners, on July 10, 1967, approved the request and passed a resolution to increase the county tax levy from $1.70 to $1.85 per $100.00 valuation to supplement teachers' salaries in the public schools of Washington *219 County; and that this was done without submitting the question of the fifteen cent increase to a vote of the people (paragraphs 3, 4, 5 and 6). These allegations are admitted by the demurrer.
Effective 6 July 1967 the 1967 Legislature rewrote the last paragraph of G.S. § 115-80(a) to read as follows:
"Notwithstanding any other provisions of this chapter, when necessity is shown by county and city boards of education, or peculiar local conditions demand, for adding or supplementing items of expenditure in the current expense fund, including additional personnel and/or supplements to the salaries of personnel, the board of county commissioners may approve or disapprove, in part or in whole, any such proposed and requested expenditure. For those items it approves, the board of county commissioners shall make a sufficient tax levy to provide the funds: Provided, that nothing in this chapter shall prevent the use of federal or privately donated funds which may be made available for the operation of the public schools under such regulations as the State Board of Education may prescribe." (Emphasis added.)
If the foregoing grant of authority to tax is not violative of the Constitution of North Carolina, or contradictory of some other statute, the action of the County Commissioners in increasing the tax levy seems authorized.
The plaintiffs assert that the increased levy without a vote of the people violates the provisions of G.S. § 115-116, and is therefore unlawful. G.S., Chap. 115, Art. 14 makes provision whereby various boards of education, as well as school committees of a district and the people in the area of a school system may petition for an election for various purposes. G.S. § 115-116 defines the purposes for which an election may be called. G.S. § 115-118 defines who may petition for an election. G.S. § 115-119 spells out the information which must be contained in the petition. G.S. § 115-120 requires the board of education to whom a petition may be addressed to give the petition due consideration. G.S. § 115-121 requires the county commissioners (or the governing body of the municipality) to call an election upon petitions approved by the board of education. G.S. § 115-122 through 115-124 provide the rules for such an election and the rules governing various matters following such an election. The clear intent of these statutes is to provide a method by which the county commissioners may be compelled to call an election to obtain a tax levy or for other purposes. None of these statutes would prohibit the county commissioners, upon a proper finding of necessity, from levying an additional tax to supplement the current expense fund for the purpose of supplementing teachers' salaries, if the county commissioners are otherwise authorized to do so.
The plaintiffs assert that the increased tax levy without a vote of the people violates the provisions of G.S. § 115-80(b). This section is entitled "Supplemental Tax Budget" and merely provides for budgetary procedures in instances where there has been an election to obtain a tax levy. It in no way prohibits the county commissioners, upon a proper finding of necessity, from levying an additional tax to supplement the current expense fund for the purpose of supplementing teachers' salaries, if they are otherwise authorized to do so.
Plaintiffs assert that G.S. § 115-80(a) is unconstitutional because it violates Article VII, Section 6 (formerly Section 7), of the Constitution of North Carolina, and therefore can furnish no authority for the action of the county commissioners in levying the tax without submitting the question to a vote of the people. Article VII, Section 6 (formerly Section 7), of our Constitution is as follows:
"No debt or loan except by a majority of voters.No county, city, town, or other *220 municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose. (Const.1868; 1947, c. 34.)"
Constitutional limitations upon the independent powers of a county, city, town, or other municipal corporation is not the real question raised by this appeal. Under G.S. § 115-80(a) a county operates under a delegation of authority from the General Assembly to carry out a function imposed upon the General Assembly by Article IX, Section 2 of the Constitution of North Carolina; therefore the real question is whether there is a constitutional limitation upon the authority of the General Assembly to authorize a tax levy to carry out its function of providing for a system of public schools. The pertinent parts of Article IX, Section 2, reads as follows:
"General Assembly shall provide for schools; separation of the races.The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years. * * * (Const.1868; Convention 1875.)"
In the case of Bridges v. City of Charlotte, 221 N.C. 472, 20 S.E.2d 825, the Supreme Court was considering the constitutionality of a tax levy, which was not submitted to a vote of the people. The levy was made by the local governing authorities for the purpose of payments to be made to the State Retirement System for the teachers in the Charlotte school district. It was contended there that the tax was not for a necessary purpose and that the statute authorizing a levy for that purpose was unconstitutional. The tax levied was defended under the authority of Chapter 25, Public Laws of 1941, section 8, subsection (c) (now codified as G.S. § 135-8(b) (3) ), which read in part as follows:
"Provided, that for the purpose of enabling the county boards of education and the board of trustees of city administrative units to make such payment, the tax levying authorities in each such city or county administrative unit are hereby authorized, empowered and directed to provide the necessary funds therefor."
In passing upon the question in the Bridges case our Supreme Court said:
"The plea that the levy of such a tax by a county, without submission to popular vote, is prohibited by Article VII, Section 7, of the Constitution, as not being for a necessary expense, was raised and settled in Collie v. Franklin County Commissioners, 145 N.C., 170, 59 S.E. 44, by the declaration that the requirement that the public schools be maintained is a mandate of a coordinate article of the Constitution of equal dignity and force, and must be obeyed; and that Article VII, section 7, had no relation by way of limitation on the taxing power exercised for that purpose. Three of the Justices of the great court which decided this case, in separate concurring opinions, wrote their names upon this monument to our educational progress.
"There was in the mind of the Court a clear comprehension of the functions and powers of the State and of the agencies set up to perform this duty, and there was no confusion at any time as to where the ultimate duty and power was seated; and none, we think, as to the consequences which must follow a delegation of this duty and power as a matter of convenience of administration to the agencies selected. Nor should there be any doubt today that maintenance of the public schools and the furnishing of those things which are reasonably essential to that end are within the mandatory provision of the Constitution, unaffected by the `necessary expense' provision contained *221 in the municipal section of the Constitution.
"The State is not a municipality within the meaning of the Constitution. It seems to us self-evident that it may perform the duties required of it by the Constitution, as well as exercise those powers not otherwise prohibited, without embarrassment by constitutional limitations expressly operating on municipalities alone. Const., Art. IX, secs. 2, 3; Const., Art. VII, sec. 7. The public school system, including all its units, is under the exclusive control of the State, organized and established as its instrumentality in discharging an obligation which has always been considered direct, primary and inevitable. When functioning within this sphere, the units of the public school system do not exercise derived powers such as are given to a municipality for local government, so general as to require appropriate limitations on their exercise; they express the immediate power of the State, as its agencies for the performance of a special mandatory duty resting upon it under the Constitution, and under its direct delegation."
* * * * * *
"We understand that what courts appropriately refer to as the `mandate' of Article IX of the Constitution carries with it not merely the bare necessity of instructional service, but all facilities reasonably necessary to accomplish this main purpose. And in this respect the word `necessary' has long been regarded as a relative, not an exigent, termcertainly not one which may be used to drain the life and substance out of a project with which it is connected, but one which itself must accept an interpretation consonant with the reasonable demands of social progress. We do not differ with the General Assembly in its policy as expressed in this legislation, but we point out that the matter is exclusively within the province of that body."
In a concurring opinion in the Bridges case, Justice Barnhill had this to say:
"It is the duty of the Legislature, under the mandate of the Constitution, to establish and maintain, within the means of the State, `a general and uniform system of public schools.' The schools thus provided must be maintained for a minimum term of six months each year. Subject to this limitation the discretionary power to determine what is necessary and adequate and within the means of the State rests in the General Assembly. Any reasonable expense incurred to this end may be met by taxation without a vote of the people."
We hold therefore that the action of the county commissioners, as described by the allegations of the complaint, does not violate the provisions of G.S. § 115-116, nor G.S. § 115-124 (alleged as 115-224 in the complaint), nor G.S. § 115-80(b).
We also hold that the action of the county commissioners in increasing the county tax levy by fifteen cents on the one hundred dollar property valuation for the purpose of supplementing teachers' salaries without submitting the question of the levy to a vote of the people, as alleged in the complaint, was authorized by G.S. § 115-80(a).
In view of what has heretofore been said, we further hold that the last paragraph of G.S. § 115-80(a) is authorized by N.C. Const., Art. IX, § 2, and does not violate the provisions of N.C. Const., Art. VII, § 6 (formerly § 7); and that the enactment by the General Assembly of the last paragraph of G.S. § 115-80(a) was a constitutional enactment.
It follows that the conduct of the county commissioners, as described in the complaint and admitted by demurrer, was in compliance with a constitutional statute, and the plaintiffs have, therefore, failed to state a cause of action. The question of whether the budget allotments were *222 changed becomes immaterial in the light of this holding.
The trial judge was correct in denying plaintiffs' application for a restraining order, but he was in error in overruling defendants' demurrer to the complaint. The demurrer should have been sustained and the action dismissed.
Upon plaintiffs' appeal, affirmed.
Upon defendants' appeal, reversed.
MALLARD, C. J., and PARKER, J., concur.