ALFRED R. GROOMS, Petitioner v. STATE OF N.C. DEPARTMENT OF STATE
TREASURER, RETIREMENT SYSTEMS DIVISION, Respondent

No. COA00-614

(Filed 19 June 2001)

**Pensions and Retirement— local government employee—alternate benefit—election by survivor**

The trial court erred by affirming a Local Government Retirement System decision that petitioner (Grooms) was not entitled to the Survivor's Alternate Benefit under N.C.G.S. § 128-27(m) where Robinson was employed by Wake County, with Grooms designated to receive a return of accumulated contributions and the death benefit; Robinson elected to receive the maximum allowance with no survivor benefit when he retired; Grooms was designated as the beneficiary for the guaranteed refund pursuant to section (g1); Robinson died within 180 days of his last day of service and was therefore considered to have died while in service for purposes of subsection (l); the Retirement System paid Grooms the death benefit pursuant to subsection (l) and acknowledged that Grooms was entitled to the lump sum guaranteed refund as set forth in subsection (g1); and the System denied Grooms' request to receive the Survivor's Alternate Benefit (a monthly allowance) under subsection (m) in lieu of the guaranteed refund. Under the System's interpretation of the statute, the beneficiary of a member who quit or who was fired and then died within 180 days would be entitled to elect a valuable benefit, while the beneficiary of a member who retired, chose the maximum allowance, and then died within 180 days would not. This result would be both illogical and inequitable. A beneficiary who has become entitled to the lump sum death benefit provided in subsection (g1) may choose to elect the SAB alternative in subsection (m) if the retired member died within 180 days of the last day of actual service and if the three conditions in subsection (m) are satisfied.

Judge TIMMONS-GOODSON dissenting.

Appeal by petitioner from order entered 23 February 2000 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 28 March 2001.

*Kilpatrick Stockton, L.L.P., by James B. Trachtman, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Robert M. Curran, for respondent-appellee.*

HUDSON, Judge.

Petitioner appeals from the 23 February 2000 order of the trial court, which affirmed the Final Agency Decision of the Board of Trustees of the Local Governmental Employees' Retirement System (the Board of Trustees) determining that petitioner is not entitled to the Survivor's Alternate Benefit set forth in subsection (m) of N.C.G.S. § 128-27 (1999). We reverse the order of the trial court.

This case involves a dispute over the correct interpretation of a complex statutory scheme as it applies to a particular set of facts, which facts are not in dispute. For this reason, we first undertake to review the statutory scheme before setting forth the facts of the case.

The statutory scheme at issue is the North Carolina Governmental Employees' Retirement System (the retirement system) in which members contribute a portion of their monthly salary while employed with the objective that, upon retirement, they will be entitled to receive certain benefits. When a member retires, he is allowed to choose the form in which he will receive his benefits from among seven different options. The default option, commonly referred to as the "maximum allowance" option, allows the member to receive his benefits in a retirement allowance payable throughout his life in monthly installments. *See* G.S. § 128-27(b) to (b17). The other six options, set forth in G.S. § 128-27(g), allow a member to choose to receive a reduced monthly allowance upon retirement for the duration of his life, in return for some form of a "survivorship benefit," which generally entails a continuing monthly allowance after the member's death paid to a designated survivor for the life of the survivor. The only one of these six options relevant here is "Option two," which provides a reduced allowance to a retired member for his life, and then a continuing reduced monthly allowance to a designated survivor for the survivor's life.

Of course, in many cases members do not reach retirement because before they are able to reach retirement they voluntarily quit, they are fired, or they die. The statutory scheme seeks to address each of these three situations in which a member might fail to reach

retirement, as well as the results in each situation. If a member's employment ends for any reason other than for the reasons of retirement or death (i.e., quitting or being fired), he is entitled to a "return" of his total accumulated contributions (and, under certain circumstances, the accumulated interest). *See* G.S. § 128-27(f). If a member's employment ends as a result of his "death prior to retirement," the member's designated beneficiary (who is chosen by the member upon enrollment in the retirement system in a "Notice of Enrollment" form) has, potentially, two options. The beneficiary will always be entitled to receive a lump sum payment equal to the amount of the member's accumulated contributions at the time of the member's death. *See id.* In the alternative, the beneficiary may elect to receive what is called a "Survivor's Alternate Benefit" (SAB). This second option is set forth in G.S. § 128-27(m):

> (m) Survivor's Alternate Benefit.—Upon the death of a member in service, the principal beneficiary designated to receive a return of accumulated contributions shall have the right to elect to receive in lieu thereof the reduced retirement allowance provided by Option two of subsection (g) above computed by assuming that the member had retired on the first day of the month following the date of his death, provided that all three of the following conditions apply:
>
> (1) a. The member had attained such age and/or creditable service to be eligible to commence retirement with an early or service retirement allowance, or
>
> b. The member had obtained 20 years of creditable service . . . .
>
> (2) The member had designated as the principal beneficiary to receive a return of his accumulated contributions one and only one person who is living at the time of his death.
>
> (3) The member had not instructed the Board of Trustees in writing that he did not wish the provisions of this subsection apply.
>
> For the purpose of this benefit, a member is considered to be in service at the date of his death if his death occurs within 180 days from the last day of his actual service. The last day of actual service shall be determined as provided in subsection (l) of this section.

G.S. § 128-27(m). In other words, where a member dies "in service" and satisfies the three requirements in subsection (m), the benefi-

ciary who is entitled to receive a return of accumulated contributions may choose to receive, instead of a lump sum payment of the accumulated contributions, a reduced monthly allowance for life. If the beneficiary chooses the SAB, the situation is treated *as if* the member had retired (as of the first day of the month following the date on which he, in fact, died) and had chosen Option two of subsection (g) as the form in which he would receive his retirement benefits. Furthermore, for purposes of the SAB, a member is deemed to have died "in service" if he died while he was employed, or within 180 days of his last day of actual employment. As discussed in more detail below, this "180-day clause" in subsection (m) is at the core of the present dispute.

There are two other elements to the retirement system which are relevant here. First, when a retired member who is receiving a monthly retirement allowance dies, a "death benefit" is paid to a designated beneficiary, which benefit is "equal to the excess, if any, of the accumulated contributions of the retiree at the date of retirement [reduced by] the total of the retirement allowances paid prior to the death of the retiree." G.S. § 128-27(g1). In other words, if a member retires and begins to receive a monthly retirement allowance but dies before the total payments made equal the total amount he actually contributed while employed, a designated beneficiary receives the difference in a lump sum payment. This death benefit has been referred to by the agency as the "guaranteed refund," apparently to distinguish it from the "death benefit" set forth in G.S. § 128-27(l), which is the final provision relevant to this case. Pursuant to subsection (l), if a member dies while in service or within 180 days of his last day of actual service, a "death benefit" is paid to a designated beneficiary in an amount equal to the member's yearly salary, with a maximum amount of $20,000.00 (provided the employer has chosen to participate in the Group Life Insurance Plan).

As stated earlier, the facts here are not in dispute. Ronald Robinson (Robinson) was employed by the Wake County Department of Social Services. While Robinson was employed, the beneficiary designated to receive a return of accumulated contributions if he died pursuant to subsection (f), and a death benefit pursuant to subsection (l), was Alfred R. Grooms (petitioner). Robinson retired on 1 March 1998, at which time he had over twenty years of creditable service as a member of the retirement system. Upon retirement, Robinson completed an "Election of Benefits" form. On this form, Robinson elected to receive the "maximum allowance" with no survivorship benefit. On

this same form, Robinson also designated petitioner as the beneficiary for the "guaranteed refund" pursuant to subsection (g1). Robinson subsequently died on 12 June 1998, within 180 days of his last day of service.

Following Robinson's death, the North Carolina Department of State Treasurer, Retirement Systems Division (respondent), without objection, paid petitioner a $20,000.00 "death benefit" pursuant to subsection (l) because Robinson had died within 180 days of his last day of actual service and was therefore considered to have died while in service for purposes of subsection (l). Respondent also acknowledged that petitioner was entitled to the "guaranteed refund" as set forth in subsection (g1). However, respondent denied petitioner's request to receive the SAB pursuant to subsection (m) in lieu of the "guaranteed refund." Petitioner challenged respondent's denial of his request for the SAB, and the dispute came before an Administrative Law Judge (ALJ). The ALJ concluded that respondent had erroneously denied petitioner the SAB, and recommended that summary judgment be granted in favor of petitioner. Respondent appealed that decision and the Board of Trustees reversed the ALJ and affirmed respondent's original decision to deny petitioner the SAB. Petitioner appealed from the "Final Agency Decision" to the Wake County Superior Court. The trial court affirmed the decision of the Board of Trustees, and petitioner timely appealed.

On appeal, petitioner contends that the final agency decision was affected by a legal error, namely the misinterpretation of the meaning of the statute. Thus, the appropriate standard of review for this Court is *de novo* review. *See, e.g., Dillingham v. N.C. Dep't of Human Res.*, 132 N.C. App. 704, 708, 513 S.E.2d 823, 826 (1999). Pursuant to the fundamental principles of statutory construction, we must first seek to interpret the intent of the legislature, and in seeking to ascertain the legislative intent the language of the statute should be construed contextually. *See Powell v. State Retirement System*, 3 N.C. App. 39, 41, 164 S.E.2d 80, 81 (1968). In addition, we give consideration to the effect of possible interpretations of the statute, "since a construction that leads to an anomalous or illogical result probably was not intended by the legislature." *Electric Service v. City of Rocky Mount*, 20 N.C. App. 347, 348-49, 201 S.E.2d 508, 509, *aff'd*, 285 N.C. 135, 203 S.E.2d 838 (1974). In construing the meaning of a statute, it is presumed that the legislature acted with care and deliberation. *See State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970).

**GROOMS v. N.C. DEP'T OF STATE TREASURER**

[144 N.C. App. 160 (2001)]

Respondent sets forth a number of arguments in support of its interpretation of the statute, all of which essentially address the relationship between subsection (m) and the rest of the statutory scheme. First, respondent notes that subsection (m) expressly states that it provides an alternative to "a return of accumulated contributions," and that this language correlates precisely with the title of subsection (f) ("Return of Accumulated Contributions"). Similarly, respondent notes that subsection (f) expressly references subsection (m), while subsection (g1) does not. Respondent argues that these links between subsection (f) and subsection (m) reveal that subsection (m) was intended to work in conjunction with subsection (f) only and not with subsection (g1) or any other subsection. Here, there is no dispute that petitioner is entitled to a "death benefit" (the "guaranteed refund") pursuant to subsection (g1). There is also no dispute that petitioner is not entitled to the benefit provided in subsection (f).[1] Because subsection (m) works only in conjunction with subsection (f) and not with subsection (g1), respondent contends, subsection (m) does not apply to petitioner.

Second, respondent argues that, in a practical sense, once a member retires, there is no longer a discrete sum of money that can accurately be characterized as his "accumulated contributions," since the funds in a member's individual annuity savings fund account are transferred from that account to a general annuity reserve fund when the member retires. *See* N.C.G.S. § 128-30(b)(3) (1999). Third, respondent notes that where a beneficiary chooses the SAB, the reduced allowance to which the beneficiary is entitled is "computed by assuming that the member had retired on the first day of the month following the date of his death." G.S. § 128-27(m). Respondent contends that the inclusion of a fictitious retirement date for the SAB demonstrates that subsection (m) was intended to apply only to members who had not yet retired, since the only situations in which it would be necessary to establish a fictitious retirement date are situations in which the member did not actually retire prior to his death.

---

1. Subsection (f) addresses only two situations in which a "return of accumulated contributions" may be paid: (1) where a member withdraws from service prior to retirement, in which case the member may receive the return of accumulated contributions; and (2) where a member dies "prior to retirement," in which case the member's beneficiary may receive the return of accumulated contributions. Thus, under no circumstances is the "return of accumulated contributions" under subsection (f) available *following* a member's retirement. Because Robinson did retire, it is clear that petitioner is not entitled to the benefit provided in subsection (f).

Respondent's fourth and perhaps strongest argument is that petitioner's interpretation of the statute would allow petitioner, under these circumstances, to elect a retirement benefit plan that directly contravenes the choice that was actually made by the member upon his retirement. For example, here Robinson elected to receive the maximum allowance and specifically declined Option two or any other survivorship option that would have provided a reduced allowance to himself for life and then to a designated survivor, such as petitioner, for life. Under petitioner's interpretation of subsection (m), petitioner would be entitled to elect the SAB rather than the benefit provided in subsection (g1), which election would have the effect of treating the situation as if Robinson, upon retirement, had selected Option two and named petitioner as his survivor. Respondent argues that by electing the maximum allowance, it can only be assumed that Robinson affirmatively chose not to leave petitioner such a benefit, and that it would be manifestly unfair to allow the beneficiary to alter the election made by the member himself after the member's death.

Petitioner likewise sets forth a number of persuasive arguments in his brief. First, petitioner notes that subsection (m) expressly applies where a member who meets the three listed conditions dies while "in service," and that subsection (m) states: "For the purpose of this benefit, a member is considered to be in service at the date of his death if his death occurs within 180 days from the last day of his actual service." G.S. § 128-27(m). Thus, petitioner argues, because there is no dispute that Robinson died within 180 days from his last day of service, subsection (m) on its face applies to these facts. Second, petitioner argues that the language in subsection (m) stating that the SAB is available to the principal beneficiary designated to receive a "return of accumulated contributions" does not, as respondent argues, demonstrate that the SAB was intended to apply only in conjunction with subsection (f). Rather, petitioner argues, subsection (m) was also intended to work in conjunction with subsection (g1) because the beneficiary entitled to receive the benefit in subsection (g1) (equal to the accumulated contributions less the retirement payments made prior to the member's death) is a "beneficiary designated to receive a return of accumulated contributions" under subsection (m). Finally, petitioner argues that the underlying purpose of the statutory scheme in question is to "give state and local employees and their beneficiaries maximum security," and that respondent's position is counter to this policy.

Having considered all of the aforementioned arguments, and having carefully reviewed the statutory scheme in question, we must agree with petitioner's interpretation. As explained in further detail below, under petitioner's interpretation of subsection (m), the SAB would be available to the beneficiary of a member who dies within 180 days of leaving his employment for any reason, including retirement. Under respondent's interpretation of subsection (m), on the other hand, the SAB would only be available to the beneficiary of a member who dies within 180 days of leaving his employment as a result of quitting or being fired, and not as a result of retirement. Thus, respondent is placed in the difficult position of attempting to explain why we should interpret the statutory scheme as providing more preferential treatment to the beneficiary of a member who has quit or has been fired than to the beneficiary of a member who has retired. We believe respondent has failed to provide such an explanation.

The 180-day clause provides that a member will be considered as having been in service at the date of his death if his death occurs within 180 days from the last day of his actual service. Thus, by definition, the 180-day clause only applies where a member's employment has ended for some reason, and where the member subsequently dies within 180 days. Assuming for the sake of argument that, as respondent contends, subsection (m) does not apply where a member has died after retirement, the 180-day clause would apply only where a member's employment has ended for some reason other than death or retirement, such as quitting or being fired. According to respondent's interpretation, then, where a member quits or is fired and dies within 180 days, his subsection (f) beneficiary (entitled to a "return of accumulated contributions") could elect the SAB (provided the three conditions are met); but, where a member retires, chooses the maximum allowance without a survivorship benefit, and dies within 180 days, his subsection (g1) beneficiary (entitled to the accumulated contributions less the retirement payments already made) could not elect the SAB. In other words, the beneficiary of a member who quits or is fired and then dies within 180 days would be entitled to elect a valuable benefit, while the beneficiary of a member who retires and chooses the maximum allowance and then dies within 180 days would not be entitled to such a benefit. Respondent's interpretation would thus provide more preferential treatment to the beneficiary of a retirement-eligible member who has quit or has been fired than to the beneficiary of a retirement-eligible member who chooses to retire after many years of service. We believe this result would be both illog-

ical and inequitable, and we therefore decline to adopt respondent's interpretation.

Furthermore, if the legislature had not intended for subsection (m) to apply where a member retires and then dies within 180 days, such a limitation would easily have been effectuated by inserting a few words into the statute. In the absence of such an express limitation in the statute, we are compelled to assume such a limitation was not intended. Moreover, we believe that this interpretation is consistent with the overall policy of the retirement, disability and death benefit scheme, which "is not to exclude, but to include state employees under an umbrella of protections designed to provide maximum security in their work environment and to afford 'a measure of freedom from apprehension of old age and disability.' " *Stanley v. Retirement and Health Benefits Division*, 55 N.C. App. 588, 591, 286 S.E.2d 643, 645, *disc. review denied*, 305 N.C. 587, 292 S.E.2d 571 (1982) (quoting *Bridges v. Charlotte*, 221 N.C. 472, 477, 20 S.E.2d 825, 829 (1942)). The existence of the 180-day clause in subsection (m), as well as in other subsections of the statute, evidences an intent to provide some leniency under circumstances in which, by an unfortunate and chance sequence of events, a member or a beneficiary is deprived of a valuable benefit by a matter of a few months.[2]

In response to respondent's argument that a beneficiary should not be permitted to alter the retirement election made by the member himself after the member's death, we note that in any case in which a member does not desire for his beneficiary to have the option of electing the SAB, the member may prevent that possibility by instructing the Board of Trustees in writing that he does not wish the provisions of subsection (m) to apply. *See* G.S. § 128-27(m). We also note that in this case, petitioner's "Prehearing Statement" indicates that he was prepared to offer evidence to show that Robinson relied upon the interpretation of the statute argued by petitioner in making his retirement payment selection, intending for petitioner to have the option of electing the SAB if Robinson died within 180 days after his retirement.

Finally, we note that respondent has argued that petitioner's interpretation could lead to "absurd consequences" in certain situa-

---

2. Here, had Robinson died on 1 March 1998 (prior to retirement), petitioner would have been entitled to elect the SAB and thereby receive a monthly payment for life. Contrary to the suggestion of the dissent, petitioner's interpretation of the 180-day clause serves the very significant purpose of allowing petitioner to elect this valuable benefit even though Robinson died on 12 June 1998 (just over three months later).

tions. For example, respondent describes a situation in which a member, while employed, designates A as the subsection (f) beneficiary entitled to a return of accumulated contributions, then retires, chooses Option two, and designates B as the survivor entitled to a reduced monthly allowance for life at the member's death. Respondent contends that if the member then died within 180 days of his last day of service, under petitioner's interpretation of the statute A would be entitled to elect the SAB and receive a monthly allowance for life, while at the same time B would be entitled to receive a monthly allowance for life. This scenario indicates that respondent believes petitioner is arguing that he is entitled to the SAB because of his status as Robinson's subsection (f) beneficiary while Robinson was employed. However, petitioner's right to choose the SAB as an alternative benefit is not based on petitioner's status as having been the subsection (f) beneficiary while Robinson was employed. Rather, it is based on petitioner's status as the subsection (g1) beneficiary who is now entitled to the death benefit under subsection (g1) because the retirement payments made to Robinson before his death were less than his total accumulated contributions. Thus, our holding is that a subsection (g1) beneficiary who has become entitled under the terms of the statute to the death benefit provided in subsection (g1) may choose to elect the SAB alternative in lieu of the lump sum payment provided in subsection (g1) if the retired member dies within 180 days of his last day of actual service, and if the three conditions in subsection (m) are satisfied.

We note that the result of our holding simply allows petitioner to receive the benefit to which he would have been entitled if Robinson had died prior to 1 March 1998 (instead of approximately three months later), or if Robinson had quit or had been fired on 1 March 1998 (instead of retiring). Moreover, we believe allowing petitioner to elect the SAB comports with the overall policy and intent of the statutory retirement scheme which "is not to exclude, but to include state employees under an umbrella of protections designed to provide maximum security in their work environment." *Stanley*, 55 N.C. App. at 591, 286 S.E.2d at 645.

Reversed and remanded.

Judge WYNN concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

I disagree with the majority that the General Assembly intended section 128-27(m) of our General Statutes to apply to beneficiaries of state employees whose death occurs after their retirement. Therefore, I respectfully dissent.

Subsection (f) entitled "Return of Accumulated Contributions," expressly states the following:

> Upon receipt of proof satisfactory to the Board of Trustees of *the death, prior to retirement, of a member or former member* there shall be paid to such person or persons as he shall have nominated by written designation duly acknowledged and filed with the Board of Trustees, . . . the amount of his accumulated contributions at the time of his death, unless the beneficiary elects to receive the alternate benefit under the provisions of (m) below.

N.C. Gen. Stat. § 128-27(f) (1999) (emphasis added). Subsection (m) specifies that the beneficiary "designated to receive a *return of accumulated contributions*" has the right to elect the SAB and that the right to receive the SAB is further "in lieu []of" the return of accumulated contributions. N.C. Gen. Stat. § 128-27(m) (1999) (emphasis added). Subsection (m) expressly refers to the beneficiary entitled to "a return of accumulated contributions," does not refer to the beneficiary who, under subsection (g1), is entitled to receive accumulated contributions adjusted for previously disbursed retirement allowances, nor does it state that the SAB is "in lieu of" benefits under that subsection. Furthermore, unlike section (f), subsection (g1) does not reference subsection (m).

Construing the plain language of the statutory scheme in *pari materia, see In re Jackson,* 84 N.C. App. 167, 174, 352 S.E.2d 449, 454 (1987) ("statutes which deal with the same subject matter must be construed in *pari materia* and be harmonized, if possible, to give effect to each"), I agree with the respondent's interpretation that the right to elect the SAB belongs only to the beneficiary of a member who dies in service or a former member who dies within 180 days after leaving state service.

The majority concludes that aforementioned interpretation of the statutory scheme is illogical. The majority ignores respondent's well-reasoned and plausible explanation in its brief and at oral argument that the SAB provision was intended to provide a benefit only to the

survivors of members and former members dying within 180 days, who die or leave state service after obtaining eligibility for, but prior to, retirement. By its express language, subsection (m) is available *only* to the beneficiaries of those members and former members, who have "attained such age and/or creditable service" to be eligible for retirement, or who have, after twenty years of creditable service, met other specified qualifications. N.C. Gen. Stat. § 128-27(m). These employees continue to work beyond retirement and die in actual service, or within 180 days after discontinuing state employment, and therefore, fail, for whatever reason, to take advantage of their retirement eligibility. Subsection (m) thus provides some security to those employees that their survivors may recover benefits to which the employees would have been entitled had they retired.

Furthermore, respondent's contention that subsection (m) operates as a type of failsafe for retirement eligible employees who choose to continue working, is perhaps more logical, considering the value society places on wisdom gained through years of state service. Statutory provisions like subsection (m) rightfully encourage people's choice to work beyond retirement eligibility. In so doing, it provides not only "maximum security" but also " 'a measure of freedom from apprehension of old age[.]' " *Stanley v. Retirement and Health Benefits Division*, 55 N.C. App. 588, 591, 286 S.E.2d 643, 645 (1982) (quoting *Bridges v. Charlotte*, 221 N.C. 472, 477, 20 S.E.2d 825, 829 (1942)).

More importantly, the application of subsection (m) only to those retirement eligible employees who die "in service" would not contravene Robinson's election of benefits pursuit to subsection (g). *See* N.C. Gen. Stat. § 128-27(g) (1999). By electing option one, rather than option two, Robinson received the maximum retirement benefits, with the understanding that his beneficiary, petitioner, would receive nothing more than the "guaranteed refund" death benefit if Robinson died prior to receiving a retirement benefit equal to his accumulated contribution. *See* N.C. Gen. Stat. § 128-27(g1) (1999). Allowing petitioner to now elect the SAB would directly contradict Robinson's clear choice.

The majority also rejects respondent's contention that the "180-day clause" was not intended to bring retired employees under the purview of subsection (m), because the statute would operate to provide "more preferential treatment to the beneficiary of a member who has quit or has been fired than to the beneficiary of a member who has retired." I agree that inequitable results may arise in some cases. However, these inequities are not necessarily illogical or unfair, given

that the options already available to those employees, like Robinson, who choose to retire, are not available to those who continue to work beyond retirement eligibility. Simply stated, retiring employees have choices; those who intend that their beneficiaries receive more than the "guaranteed refund" death benefit are afforded an opportunity to elect an option reflecting that intent. Given this opportunity, applying the "180-day clause" to allow a beneficiary of a retired employee to choose the SAB serves no purpose. Instead, such an application of the statute unfairly offers the beneficiary a second bite at the proverbial apple. Furthermore, affording the beneficiary such a choice runs the risk of contradicting the retiree's original intent, as in the case *sub judice*. Therefore, by enacting the "180-day clause," the General Assembly intended to assure retirement eligible employees, in absence of the choice afforded retirees, that their beneficiaries would receive the intended benefit of contributions to the State's pension plan, even if an unforeseen death occurred after they become eligible for retirement and within six months after they are fired or quit.

Construing subsections (f) and (m) in *para materia* and given the intended application of subsection (m), I would conclude that petitioner was not in that class of persons who the legislature intended receive a benefit under section 128-27(m). Accordingly, respondent did not err in denying petitioner's request to receive the SAB in lieu of the "guaranteed refund" death benefit. For the foregoing reasons, I would affirm the decision of the Superior Court.